### MARTIN BURIK v. THE DUNDEE WOOLEN COMPANY.

Argued February 25 and 26, 1901—Decided June 10, 1901.

1. In a suit against a corporation to recover damages for personal injuries received in its service, the defendant relied upon a release drawn in the English language and executed by the plaintiff, who understood only Slavonic. The execution of the release was procured by the English-speaking secretary of the corporation, who knew no Slavonic. A fellow-countryman of the servant, in the same employment, was, without objection by the servant, called in to interpret, and, through him, the secretary undertook to make known the purport of the instrument presented for execution. *Held,* that the interpreter must be considered the agent of the defendant; and that, if the purport of the instrument was not adequately imparted to the plaintiff, it was not a valid release.

2. A verdict will not be set aside on the ground of the insanity of a juror, who gave no evidence of unsoundness of mind before or at the trial and took part with apparent intelligence in deliberation with his fellows, although not long afterward his insanity was indisputable, and was of such a nature as probably to have existed, to some extent, at the time of the trial—medical opinion differing as to whether it would then have impaired his power of deliberative judgment as a juror.

On rule to show cause.

Before DEPUE, CHIEF JUSTICE, and Justices DIXON, COLLINS and HENDRICKSON.

For the defendant, in favor of the rule, *Eugene Stevenson.*

For the plaintiff, *contra, Michael Dunn.*

The opinion of the court was delivered by

COLLINS, J. The plaintiff recovered a verdict in compensation for personal injuries sustained in the service of the defendant. His lower jaw was broken in three places by the flying fragments of a "hydro-extractor" that burst while revolving with great rapidity. It was used for drying rags that had been washed in a solution of vitriol, corrosive of the iron hoops surrounding the wooden staves of the extractor. The cause was tried before Mr. Justice Dixon at the Passaic Circuit, and was properly submitted to the jury on the question of the failure of the master to use reasonable care for the safety of the servant. On the point of liability the verdict was justified, and has not been seriously challenged on the argument of this rule. The controversy in this court has been over the affirmative defence of accord and satisfaction by the payment of $69.80 and the plaintiff's general release under seal, and over the alleged incompetency of a juror.

*First.* The plaintiff did execute such a release, reciting as consideration the sum named, which was proved to have been made up of physicians' and hospital bills and wages while the plaintiff was away from his work. The question submitted to the jury, and by them decided adversely to the defendant, was whether the purport of the paper he signed was adequately imparted to the plaintiff; or whether, as he claimed, he was informed that the document embraced an agreement to give him employment during his life. The effort to settle with the plaintiff was made at the request of a representative of an indemnity company, and was conducted by the secretary of the defendant—the proposed release having been drawn in advance in the English language. The plaintiff knew only Slavonic. The secretary spoke English and knew no Slavonic. He called in a fellow-countryman of the plaintiff, who worked for the defendant, and, through his interpretation, undertook to make known to the plaintiff the

purport of the instrument presented for his execution. Some conversation about the plaintiff's continued employment admittedly occurred, and the dispute is as to how it was interpreted. The jury were instructed that a release executed in consideration of a parol promise of employment would be valid; and that; only in case they should find that the plaintiff was informed that the instrument he was asked to execute embraced such an agreement when, in fact, it did not, could they disregard it as a bar to the action. The defendant contends that the interpreter was agent for both parties, and that any misinformation by him of the contents of the release, not due or known to the secretary, is not chargeable to the defendant. This is a misconception of the *status* of the case. Where parties are on equal terms each must look out for himself; but where one is illiterate, to the knowledge of the other who tenders for execution a document of whose contents he is cognizant, a duty of adequate explanation rests on him who so tenders it. In the case in hand the interpreter must be considered as having been the agent of the defendant. An objection that the judge told the jury that an obligation rested on the defendant to make the plaintiff understand the instrument is hypercritical. An exact translation was not attempted, and probably was beyond the power of the intermediary. The secretary essayed to state in English the purport of the instrument, and the interpreter gave to the plaintiff in Slavonic his version of what had been told him. The plaintiff's complaint was not that he did not understand the words that were used, but that words that were used expressed an untruth. We are satisfied with the way in which the case was put to the jury.

It is urged that because the plaintiff did not tender reimbursement of the $69.80 he should not be heard to attack the release. If he were seeking to disavow for fraud a paper intelligently signed this would be so, but the legal effect of the verdict is that the release is not his deed, and that—not fraudulent procurement—should have been the replication to the plea. As the facts were fully litigated the form of pleading need not be scrutinized. Upon a rule to show cause a

verdict based on the real issue will never be disturbed because the one formulated fails.    Credit on the possible damages— not reimbursement—was the right of the defendant.

*Second.* The trial was concluded on April 26th, 1900, and in due season application was made for a rule to show cause why a new trial should not be granted.   Pending its consideration the defendant discovered that one of the jurors had been found to be insane, and the rule, which was granted May 8th, 1900, permitted taking affidavits on that subject.   Those affidavits make it quite plain that some days after the verdict this man was insane, and experts differ in opinion as to whether, in the nature of the case, his mind at the time of the trial must have been so disordered as to have rendered him incompetent to act as a juror.   There was direct testimony that there was no abnormality in his conduct until after the trial, and some of his fellow-jurors testified that he took part with apparent intelligence in the deliberation of the jury, and that his attitude was not at all unfavorable to the defendant.   Although testimony of jurors cannot be received to impeach their verdict, it is legitimate to support it.   We are not satisfied on the proofs adduced that the man was incompetent to act as a juror.

The damages awarded were $6,155.   We think this amount excessive.   Of course, the plaintiff suffered great pain from his wounds and in the process of healing, but the fractures were all successfully reduced, and the main injury results from the fact that his jaw has become so set that he cannot open it sufficiently for mastication.   We think the evidence shows that the strong probability is that this condition will greatly improve, and while desiring to view such a case with liberality, we are unwilling to sustain so large a verdict.   If the plaintiff will remit $2,000 the verdict may stand; otherwise the rule to show cause will be made absolute.