GRAND LODGE ANCIENT ORDER UNITED WORKMEN *v.* WOOD.

## Opinion delivered June 29, 1914.

1. BENEFIT INSURANCE—SUICIDE—EVIDENCE.—Evidence held sufficient to warrant a finding by the jury that deceased, the holder of a benefit certificate, died as a result of the accidental taking of carbolic acid, and not by suicide. (Page 506.)

2. SUICIDE—QUESTION FOR JURY.—In an action on a benefit certificate of insurance, the jury has the right, in weighing the evidence, to draw inferences from the human instinct of self-preservation in determining whether death resulted from suicide, or resulted from accident; and this is so regardless of the question of where the burden of proof rests. (Page 506.)

3. EVIDENCE—EXPERT TESTIMONY—HYPOTHETICAL QUESTION—OPINION ON ALL THE EVIDENCE.—Parties to a trial have the right to take the opinion of experts upon questions involved in the case which can only be answered by those who have expert knowledge on the subject; but it is improper to submit to an expert all the evidence in the case and take his opinion upon that issue, for that amounts to an invasion of the province of the jury. (Page 507.)

4. EVIDENCE—BENEFIT INSURANCE—EXPERT WITNESS—TESTIMONY OF.—In an action on a benefit insurance certificate, when the issue of suicide is involved, it is proper to ask the opinion of an expert witness concerning the effect of swallowing carbolic acid, in a given quantity and under given circumstances, but it would be highly improper to permit this witness to sum up all the evidence in the case, in matters not exclusively within his knowledge of an expert, and give his opinion thereon. (Page 507.)

5. JUROR—INSANITY—DISQUALIFICATION.—Although a juror may be technically disqualified from jury service by reason of his having

once been adjudged insane, and his not having been legally eman-
cipated from the disability of insanity, when the proof shows that
he was not, in fact, mentally disqualified from performing jury
service, and that no prejudice resulted from his being accepted
on the jury, the verdict will not be disturbed.   (Page 508.)

6.   JURORS—DISQUALIFICATIONS—OBJECTIONS.—An objection to a juror,
on the ground of disqualification, if made after verdict, comes
too late.   (Page 508.)

Appeal from Ouachita Circuit Court; *W. E. Patter-
son,* Judge; affirmed.

*Carmichael, Brooks, Powers & Rector,* for appellant.

1.   Where the defense is suicide within two years
from date of policy, proofs of death showing that the
cause of death was suicide is *prima facie* evidence
thereof.   Best on Ev., § 273; 44 N. E. 1099; 64 Atl. 903;
27 S. E. 29; 120 Fed. 475; 130 Wis. 61; 22 Wall. 793; 181
U. S. 49; 84 Cal. 570; 79 Fed. 46.

2.   Self-destruction means suicide.   105 Fed. 172;
150 U. S. 468; 29 Ill. App. 437.

3.   Doctor Newton's report was a part of the proof
of death and admissible.   44 N. Y. Supp. 581; 15 N. E.
220; 80 Ark. 196; 81 Hun, 287.

4.   The juror, Romack, was insane.   Kirby's Dig.,
§ § 4506-8; 64 Conn. 161; 29 Ark. 111; 2 Ill. (1 Scam.)
476.   "Jury" means a jury of twelve men.   16 Ark.
384-410; 8 *Id.* 436; 47 *Id.* 568; 32 *Id.* 17-25; 41 Tex. 93.

*Creed Caldwell* and *H. S. Powell,* for appellee.

1.   No objections were saved to the giving and re-
fusal of instructions.   35 Ark. 412; 94 *Id.* 147; 96 *Id.*
379; 104 *Id.* 375.

2.   Suicide is never inferred—it must be proven.
The jury are the judges of the facts.   61 Ark. 549; 80
*Id.* 190.

3.   Doctor Newton's testimony was immaterial.

4.   Expert testimony would not have thrown any
light on the question.   55 Ark. 593; 62 *Id.* 70.

5.   Objection to a juror after verdict comes too late.
Kirby's Dig., § 4494.

McCulloch, C. J.   This is an action to recover the amount of a benefit certificate or policy issued by appellant, a fraternal benefit society, to one of its members, William L. Wood, who died on June 10, 1913.   The policy was payable to appellee, who is the infant son of the member.

The application, which formed a part of the contract, contained the following provision:

"I further agree that if, within two years after the date of my taking or receiving said Workman degree, my death should occur by suicide, whether sane or insane, except in delirium resulting from disease, or while under treatment for insanity, or after a judicial declaration of insanity, then the only sum which shall be paid, or which is payable to my beneficiary in my benefit certificate, shall be the amount which I may have paid into the beneficiary fund of the order during my term of membership."

The dead body of William L. Wood was found in a bedroom adjoining his store in Camden in the early morning of June 10, 1913, and the evidence tends to show to a certainty that his death was caused by swallowing carbolic acid.

The sole issue of fact presented in the trial below was whether the acid was taken by accident or whether with suicidal intent.

No exceptions were saved to the instructions of the court.   Therefore, the only question presented here is whether or not the evidence was sufficient to sustain the verdict.

Deceased was in the grocery business in Camden, Arkansas, and resided with his wife and son, the appellee herein, in that city.   The evidence, as abstracted, does not show how far it was from his store to his residence. He and his wife occupied the same room but separate beds, and she testified that the last she saw of him was when he retired the night before his body was found in the room at the store.   She testified that she did not know when he left the room, but when she was summoned

to the store early next morning about 6 o'clock she found the body still warm, as if death had ensued only a short time before. The body was found lying across the bed, in a small bedroom next to the store, about 5 o'clock in the morning. The body was face downward, stretched across the bed, and the cover was partly turned down. The hands of deceased were extended forward and reached slightly over the edge of the bed. There was a strong odor of carbolic acid in the room and a broken bottle containing a little of the acid was found on the floor over behind the bed. The mouth of deceased gave indications that he had swallowed some of the acid. It was a six-ounce bottle, and one of the broken ends of the bottle contained a small amount of the acid. The evidence tends to show that Wood purchased the bottle of carbolic acid a few days before his death for the purpose of administering treatment to a horse which was worked to his delivery wagon. There were a number of other bottles on a shelf in the room, among others a bottle of chill tonic and a bottle of pepsin. A physician testified that Wood suffered with indigestion and the use of pepsin had been prescribed for that ailment.

There was some testimony adduced by appellant to the effect that Wood brooded over the death of his little daughter, which occurred about a year before his death, and that he had become to some extent morose, and thus formed a suicidal intent, which he carried out by swallowing the carbolic acid.

Other testimony adduced on behalf of appellee tended to show that deceased maintained a cheerful disposition up to the time of his death, and that his conduct displayed no disposition on his part to shorten his life.

Several physicians were introduced as witnesses, who testified as experts on the question whether carbolic acid in sufficient quantity to produce death would likely have been unintentionally swallowed by deceased, or whether it would have been expelled from the mouth without swallowing it if there had been no intention to take the dose. There was a conflict in the testimony on

that question.   One of the physicians testified that it was possible for a person to take, by mistake, carbolic acid out of a bottle in quantity sufficient to produce death.

We are of the opinion that the evidence was sufficient to warrant the jury in finding that deceased's death resulted from accident in taking the carbolic acid by mistake, and not from taking it with suicidal intention.

The human instinct of self-preservation raises a presumption against suicide, and, as it was not conclusively shown that deceased came to his death as the result of an act committed with suicidal intent, the jury had the right to draw the inference that death resulted from accident, and not as the result of the use of carbolic acid with suicidal intent.  *Grand Lodge, etc.,* v. *Banister,* 80 Ark. 190.

The evidence shows that the mother and guardian of appellee, the beneficiary under the policy, in making out proof of loss, stated that the death of deceased resulted from suicide, and appellant cites authorities to the effect that, in a suit on the policy, this constitutes *prima facie* evidence of suicide.

That question is not presented, for, as has already been stated, there were no exceptions saved to the instructions, and we have only before us, for decision, the question of the sufficiency of the evidence.

Whether the statements in the proof of loss changed the burden of proof, we need not decide, but, aside from that question, the jury had the right, in weighing the evidence, to draw inferences from the human instinct of self-preservation in determining whether or not death resulted from suicide, or resulted from accident.   This is so, regardless of the question where the burden of proof in the case rests.

Error is assigned in the ruling of the court in refusing to permit counsel for appellant to propound the following hypothetical question to an expert witness:

"Assuming that there is a shelf six inches wide, and four or five bottles on it, one bottle of ink, and a bottle of liniment, and a bottle of antiseptic, and a bottle of

essence of pepsin, and one of chill tonic, and a bottle of pure carbolic acid, and one of coal oil, and a party was found with a lot of carbolic acid that had run out of his mouth and had run down his cheek, enough to burn it, and there was a splotch of carbolic acid on the floor, and a splotch over behind the bed, and a man was lying in repose on his left arm, the cover practically undisturbed, or rather smooth, and the bottle was broken behind the bed, and the odor of carbolic acid being pronounced, in your opinion, would you say death resulted from suicide, or whether it was accidental?"

That witness, as well as others introduced by appellant, were permitted to testify as experts as to the effect of swallowing carbolic acid; but it will be observed that this question submitted to the witness the issue to be determined by the jury, namely, whether all the evidence in the case showed that the acid was taken with suicidal intent, or by mistake.

The parties had the right to take the opinion of experts upon questions involved in the case which could only be answered by those who have expert knowledge on the subject; but it was improper to submit to an expert all the evidence in the case and take his opinion upon that issue, for that would amount to an evasion of the province of the jury. *Castaine* v. *United Railways Co.,* 249 Mo. 192.

It was entirely proper to ask the opinion of the witness concerning the effect of swallowing carbolic acid in a given quantity and under given circumstances, but it would have been highly improper to have permitted this witness to sum up all the evidence in the case, in matters not exclusively within the knowledge of an expert.

There is one other question in the case properly raised, and that relates to the qualifications of one of the jurors who sat in the trial of the case. The juror in question was a member of the regular panel, and was accepted by the parties as one of the jurors in this case. Several months before the trial, he had been adjudged insane and sent to the State Hospital for Nervous Dis-

eases, and confined there for a short period, when he was paroled. He was regularly selected on the jury, probably without knowledge on the part of those who selected him, and served throughout the term of the court. The sheriff and some of the other officers about the court knew of this fact, but it appears not to have been within the knowledge of the attorneys on either side of this case. Appellant's attorneys ascertained the status of the juror after the trial of the case and incorporated the point of his incompetency as one of the grounds for a new trial. A number of affidavits produced by appellee—those of the sheriff and quite a number of jurors who served with the one in question—all state that he was perfectly sane and in normal mental condition, and that they discovered nothing wrong with him throughout his service of about three weeks on the jury.

If it be conceded that the juror was technically disqualified from jury service by reason of his not having been legally emancipated from the disability of insanity, the proof shows with reasonable certainty that he was not, in fact, mentally disqualified from performing jury service, and that no prejudice resulted from his being accepted on the jury.

The statute provides that "no verdict shall be void or voidable because any of the jurymen fail to possess any of the qualifications required." Kirby's Digest, § 4494.

Pursuant to that statute, we have held that objection after verdict, on the ground of disqualification of a juror, comes too late. *James* v. *State*, 68 Ark. 464.

We are of the opinion that there was no error in refusing to grant a new trial on account of the technical disqualification of the juror.

There are other assignments, but nothing else which we deem it necessary to discuss. Judgment affirmed.