DOROTHY T. IVERSON, PLAINTIFF-RESPONDENT, v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.

Argued October 17, 18, 1940—Decided April 3, 1941.

For the plaintiff-respondent, *John F. Ryan.*

For the defendant-appellant, *Frankel & Frankel* (*Abraham Frankel,* of counsel).

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. The defendant, insurance company, appeals from a judgment in favor of the plaintiff. The disputed issue in this case was whether plaintiff's decedent, Lawrence Iverson, who met his death on March 6th, 1938, died as a result of "bodily injuries effected solely through external, violent and accidental means, of which * * * there is a visible contusion or wound on the exterior of the body * * *." The action was based on a double indemnity insurance policy issued by the defendant to the decedent during his lifetime. The deceased died as a result of being struck by a railroad train while in his automobile on the Silverside Crossing in Monmouth County, New Jersey.

The defendant asserted that the death was not the result of accident but of self-destruction. The jury returned a verdict in favor of the decedent's widow, who was named as beneficiary in the insurance contract.

The defendant insurance company, in its appeal, sets up thirty-four grounds for reversal which challenge the conduct

of the trial in several departments. The first six grounds of appeal argued by the appellant under the first point in its brief will not be considered. The printed transcript of the proceedings in the trial court not only shows no objection to the matters now complained of but indeed an explicit acquiescence by appellant's counsel that the statements made by the trial court were accurate and in complete harmony with the appellant's then viewpoint.

The second point in the brief comprehends three grounds of appeal, namely the thirteenth, fourteenth and fifteenth. These will not be considered since at the trial no objection was lodged against the matters and things now challenged.

Under the third point grounds of appeal numbered eight, nine and twenty-three are argued. As far as the eighth ground of appeal is concerned—the reception of testimony given by the witness, MacCubbin—there is no objection to the question in the record and therefore no judicial ruling to review. It is elementary that counsel may not stand mute when testimony is received and later by writing down a ground of appeal ask an appellate court to reverse for reasons not made known to the trial court. Ground of appeal nine asserts error in allowing certain testimony from this witness, and ground twenty-five asserts error in refusing to strike out the testimony. The witness, Mr. MacCubbin, who was successor to the deceased Lawrence Iverson as general manager of the company in which both were employed, was asked whether he saw a memorandum on the diary of the decedent for Monday, March 7th, 1938. The deceased met his death on Sunday, March 6th. Plaintiff's counsel asked what the "notation was." The court allowed the witness to answer subject to motion to strike out the testimony. The objection was that the memorandum was "a self-serving declaration" and further there being no proof as to when the "reminder" was written, the notation was not evidential. In the motion to strike out the answer appellant said "the sole question involved is when that memorandum was made." The evidence indicated that the decedent intended to be in the New York office of his employer on March 7th; the notation "N. Y. O." was thus interpreted by the witness. Testimony that the memorandum

was in the decedent's hand-writing on the diary leaf for March 7th, 1938, was received without objection. In ruling on the matter the court held—and we think correctly—that this evidence was a fact or circumstance for the jury's consideration. It is obvious from the testimony of the witness that the diary was in fact a calendar pad for the year 1938, a sort of day-by-day engagement pad. Its pages for earlier days and dates were torn off, presumably by the decedent, although that is a matter of little consequence. The situation was that MacCubbin found this engagement pad a day or two after the decedent's death and that its earlier pages had been discarded. The ground of the objection—that the memorandum was a "self-serving declaration"—has no validity whatever. The argument begs the question. It assumes that the decedent did die by his own act and made the notation in question on his desk pad as some evidence that his death would be considered accidental. The second objection to the question was addressed to the possible remoteness of the entry. The desk pad was for the year 1938, so the entry in the normal course must have been made in the month of January, February or up to March 6th. But conceding that the entry was possibly remote, the admission of such evidence is within the discretion of the trial court, and is not a ground for reversal. *Worcester Loom Co.* v. *Heald*, 78 *N. J. L.* 172.

In arguing that the testimony was improperly received, the appellant refers to the case of *Veader, Exec.* v. *Veader*, 89 *N. J. L.* 399. That authority is not applicable to this issue. We find no error in the reception of the testimony in question nor in rejecting application to strike out the evidence thus received. It was another fact or circumstance for the appraisal of the jury in its determination of the whole issue.

The next point is that the trial court erroneously excluded testimony which would prove or tend to prove payments made by surety companies in satisfaction of their liability on bonds, covering the deceased as an employe of the Catalin Corporation, for certain defalcations alleged to have been perpetrated by the decedent, and includes grounds of appeal ten, eleven, twelve, sixteen, seventeen, eighteen and nineteen. The first three of these grounds of appeal challenge as error the act

of the trial judge in sustaining an objection to questions asked of the witness, MacCubbin. The substance of the questions was whether the witness knew that the two bonding corporations had paid over money to the employer of the decedent. Two such questions were overruled as immaterial in the form in which they were posed. And they were immaterial. They contained no element related to the issue in this case; the questions were vague and general. A third question was whether the witness had "access to the books at the Fords plant." This, too, was immaterial. The remaining grounds of appeal allege trial error in ruling on evidence and in excluding certain exhibits marked for identification. It is sufficient to say that the question addressed to the witness, Brickze, was not in form material to the issue; and the *Exhibits D-10* and *D-11* which were excluded are not brought up with the record and we have no way of knowing what they are and consequently cannot determine whether they were pertinent to the issue. For the nineteenth ground we find no exception in the record. None of these grounds of appeal is argued with any particularity. All are grouped under a single heading. They are argued at large but as we read the record we are not persuaded there was any harmful error in the ruling of the trial judge. Before leaving this point we are constrained to say that there is no evidence in the case of defalcations on the part of the deceased and it is most improper for appellant to argue the point in the brief as though such evidence was present.

The next point is that the court erred in refusing to strike out the testimony of the witness, Sheedy. The appellant says the testimony was incompetent. Objection should have been made to the "incompetent" questions when asked. It was not. A party may not risk answers to questions and hazard the chance on what the information will be and then later ask that such testimony be rejected if it prove harmful. *State* v. *D'Adame,* 84 *N. J. L.* 386.

It is next said that error arose by receiving in evidence a written statement of one Broderick. This witness investigated the happening out of which this cause of action arose and had also interviewed persons who were witnesses thereto.

He made a written memorandum. On cross-examination appellant's counsel asked for the record which the witness had made. It was produced. Plaintiff's counsel, attempting to limit the scope of the examination to the pertinent, material part thereof, suggested that there were "other things on the paper." The paper was marked for identification. The witness was cross-examined concerning it and when the cross-examination was finished plaintiff's counsel offered the paper in evidence. The court received it—we think properly. Plaintiff had neither injected the report of the investigator into the case nor referred to it. The defense called for the report for the stated purpose of showing contradictory statements therein. In this posture of affairs it was entirely proper to have received the memorandum in evidence. The court was careful to instruct the jury at this juncture that it was concerned only with that portion of the document having to do with the question involved. The action of the trial judge on this phase of the case was not error.

Finally, it is argued that the court erred in its charge in several particulars. We have read the charge and find it free from error. The comprehensive charge of the trial judge was a fair and helpful exposition of the rules of law governing the case.

As an aftermath of this trial, it appears that one of the jurors became insane shortly after the verdict. A rule to show cause was allowed and one of the reasons argued and considered for making the rule absolute was that the said juror was not qualified to act as a juror. A record thereon was made up. Included therein was the deposition of one of the Circuit Court judges who interrogated the juror six days after the trial had ended; the deposition of an attache of the court and of three jurors as well as that of Dr. J. Berkely Gordon, an alienist. The trial was concluded May 8th, 1940. The juror's strange behavior was noticed on May 14th, and he was admitted to State Hospital for Insane May 17th, 1940. The juror, Andrew Cifrak, presently suffers an insanity of a type which conjures up an imaginary world and results in a loss of "contact with reality."

The depositions of the jurors reveal that the juror in ques-

tion was stubborn in agreeing on a verdict although on the main issue he voted with alacrity that the death of Iverson was not suicidal. It is quite clear that this man was insane on the 17th of May, 1940. Testimony of jurors may be received to support their verdict, not to impeach it. *Burik* v. *Dundee Woolen Co.,* 66 *N. J. L.* 420. The alienist expressed the opinion that the juror was undoubtedly insane at the time he served as a juror in this case. On cross-examination, however, this opinion given on his examination in chief in answer to a hypothetical question was, in our judgment, considerably weakened. The trial judge discharged the rule to show cause, concluding that it was not shown that the juror was so incompetent at the trial as not to be able to comprehend "the nature and quality" of his acts. In its brief appellant concedes that "at the commencement of the trial the juror gave all indications of normal poise and mentality." It is not claimed that he became insane during the trial. The fact that he was "stubborn" on one phase of the jury question during the deliberations of that body is not uncommon. If he had become deranged before the conclusion of the trial the court would have been obliged to deal with that situation when it arose. Such, however, is not the question now. The cases on this phase of the law are collected and cited in *Dickerson* v. *North Jersey Railway Co.,* 68 *N. J. L.* 45; compare *Tarnow* v. *H. & M. R. R. Co.,* 120 *Id.* 505. The time to inquire into the competency of a juror is before he is sworn and accepted. *R. S.* 2:85-1; 2:92-4. The conclusion of the trial court in discharging the rule to show cause was entirely reasonable.

One further thing should be mentioned—the deposition of the several witnesses just mentioned were taken on June 14th, 1940. The opinion of the trial court denying the application for new trial was filed later on. But we find in the record, under date of August 20th, 1940, what purports to be a writ of *certiorari* addressed to the trial judge, Hon. William A. Smith, Hon. Robert V. Kinkead, a Circuit Court Judge, and the Supreme Court Commissioner before whom depositions on the matter of the juror, Cifrak, were taken, Hon. Edward F. Juska; also to Fred L. Bloodgood, clerk of the Supreme Court, and Joseph C. Kingdon, 2d, the official stenographer.

There is nothing in the record to show any return to this writ of *certiorari*. Perhaps counsel intended to follow the old practice of bringing up out-branches of the record which could not be returned by strict appeal. See *Gilliland* v. *Rappleyea*, 15 *N. J. L.* 138; *Apgar's Admr's* v. *Hiler*, 24 *Id.* 808; *Brown* v. *Warden*, 44 *Id.* 177; *Corn* v. *Kaplan*, 103 *Id.* 628, 631; rule 33 of the Court of Errors and Appeals. Notwithstanding the irregularity of the practice followed in this case, we have nonetheless considered the outbranches if that is what the appellant considers these depositions to be. We find in them, as we indicated above, nothing to persuade us that the trial court abused his discretion in discharging the rule to show cause.

The judgment will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, DEAR, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 13.

*For reversal*—None.