201 P.3d 607

STATE of Hawai'i, Plaintiff–Appellee,

v.

Wayne C. LAEDA, Defendant–Appellant.

No. 27134.

Intermediate Court of Appeals of Hawai'i.

Nov. 28, 2006.

Certiorari Rejected April 17, 2007.

Deborah L. Kim, Deputy Public Defender, on the briefs, for Defendant–Appellant.

Jason M. Skier, Deputy Prosecuting Attorney, County of Hawai'i, on the briefs, for Plaintiff–Appellee.

LIM, Presiding Judge, FOLEY and FUJISE, JJ.

Opinion of the Court by FOLEY, J.

Defendant–Appellant Wayne C. Laeda (Laeda) appeals from the Amended Judgment of Conviction and Sentence entered on February 4, 2005 in the Circuit Court of the Third Circuit[1] (circuit court). A jury found Laeda guilty of three counts of Promoting a Dangerous Drug in the First Degree, in violation of Hawaii Revised Statutes (HRS) § 712–1241(1)(b)(ii)(A) (Supp.2003), and three counts of Prohibited Acts Related to Drug Paraphernalia, in violation of HRS § 329–43.5(a) (1993).

On appeal, Laeda contends:

(1) The circuit court abused its discretion by denying his December 6, 2004 Motion for a New Trial and erred when it

(a) concluded that Hawaii Rules of Evidence (HRE) Rule 606(b) prohibited the court from considering the affidavit of Juror No. 11 because the affidavit clearly demonstrated that Juror No. 7 had acknowledged his own incompetence and stated his inability to participate in deliberations;

(b) noted that the in-court statements of Juror No. 7 and the jury foreperson were not made under oath; and

(c) orally found that "Juror Number Seven stated that he participated in juror deliberations and that his verdict was reflected in the jury's verdict."

(2) The incompetence of Juror No. 7 rendered the juror unable to participate in deliberations, thus substantially prejudicing Laeda's rights to a unanimous verdict under the Sixth Amendment to the United States Constitution and Article I, §§ 5 and 14 of the Hawai'i Constitution.

## I.

On November 6, 2003, the State filed an indictment against Laeda, charging him with four counts of Promoting a Dangerous Drug in the First Degree (Counts I, III, VI, and IX); four counts of Prohibited Acts Related to Drug Paraphernalia (Counts II, V, VIII, and XI); and three counts of Conspiracy to Commit Promoting a Dangerous Drug in the First Degree (Counts IV, VII, and X).[2]

On November 15, 2004, the circuit court conducted jury selection. Trial began on November 16, 2004.

The Informant who had assisted the County of Hawai'i Police Department (CHPD) in the investigation of Laeda testified first. Informant testified that in January 2003 she entered into an agreement with the State to reduce her jail time for drug charges by making drug buys of crystal methamphetamine (ice) until CHPD could make an arrest. Informant testified that she first met Laeda in May 2003 through her boyfriend. She assisted CHPD in setting up four drug transactions involving Laeda and described in detail what occurred prior to, during, and after each of the following drug transactions:

(1) The first transaction occurred in June 2003. Informant made arrangements with Laeda to purchase one-half ounce of ice for $1,300. Prior to her buy, CHPD provided Informant with a body wire and $1,300 in cash. After Informant arrived at Laeda's residence, Laeda's friend, Ludy, brought the ice. Ludy gave Informant a quarter ounce of ice, and Informant gave Ludy $600. Laeda was present during the exchange.

(2) On July 11, 2003, Informant purchased a quarter ounce of ice for $600. She called Laeda, who told her to call his friend. Informant called the friend and arranged a meeting. Prior to the buy, HCPD gave Informant the body wire and $600 in cash. Informant met with a young boy, who gave her the drugs, and she gave the young boy the money.

(3) The third transaction occurred on September 2, 2004. Informant called Laeda; whoever answered the call told her that he would meet her. Informant wore the body wire to the meeting, and Ludy showed up, gave her the drugs, and took her $600.

---

1. The Honorable Greg K. Nakamura presided.

2. Counts IV, VII, and X were dismissed on November 19, 2004 pursuant to the State's Motion for Nolle Prosequi With Prejudice.

(4) Informant arranged a fourth transaction in September 2004. Informant called Laeda, and Laeda told her to call his brother, Ronald.

Detective Correia testified that he worked with Informant on the Laeda investigation and corroborated Informant's accounts of the four drug transactions. Detective Correia testified that the fourth transaction was a "buy-bust" on September 12, 2003 (buy-bust), at which CHPD arrested Ronald. Detective Correia arrested Laeda shortly after the buy-bust.

Officer Hironaka testified that he had been involved in the investigation of Laeda and had been responsible for the recovery of the evidence at the buy-bust. An evidence custodian from CHPD testified regarding the storage of the evidence from the buy-bust. A special agent from the Drug Enforcement Administration (DEA) testified as to his role in the Laeda investigation. A DEA chemist also testified. Lieutenant Kanehailua testified regarding the buy-bust and the use of ice and confidential informants.

After the State rested, Laeda called Informant and Detective Correia to testify. Laeda also testified regarding the events surrounding his arrest. He denied that his voice was the one on the tapes made by Informant and stated that he had spoken to Informant only once and that was in person. Laeda explained that the cash recovered from the safe in his house was used in his business of purchasing used automobiles for resale purposes.

On November 23, 2004, the trial judge instructed the jury, and the parties gave their closing arguments. Later that afternoon, the jury foreperson sent a communication to the court reading "[Juror No. 7] says he 'cannot keep up.' He has not voted in test vote. We're worried that he cannot participate. Cannot hear." The circuit court responded that "[a]t this juncture, this is a matter that the jurors have to resolve among themselves." Later the same day, the jury foreperson sent another message to the court, stating that "[Juror No. 7] asks to be excused. He & the other jurors agree that he cannot participate in deliberations. So

unless he is replaced, we will be unable to reach a decision."

The circuit court convened to discuss this last jury communication with the parties and then brought in Juror No. 7. Juror No. 7 stated that he had a "bad memory"; with "everybody speaking," he could not "remember what's been said"; and this had occurred throughout his lifetime. The circuit court noted that Juror No. 7 seemed to be "responding okay to [the court's] questions," and Juror No. 7 answered that was because he was responding to "one person." Juror No. 7 stated: "Just things going back and forth, back and forth, I cannot keep up. Half the time I don't know what they're talking about.", and "I cannot make a decision" because "I don't understand what's going on all the time." The State questioned Juror No. 7, asking him if it would help if only one person were to talk at a time. Juror No. 7 responded in the affirmative. Defense counsel declined to question Juror No. 7. Neither the State nor defense counsel sought to have Juror No. 7 removed. The parties agreed instead to ask the jurors to speak slowly and one at a time so Juror No. 7 could better follow the deliberations. The circuit court then transmitted the following written message to the jury: "[Juror No. 7] will not be excused. When in deliberation, make every effort to ensure that only one person is speaking at any given time. Please allow each juror the opportunity to voice his or her opinion. Please make every effort to speak clearly, one person at a time."

On November 24, 2004, the jury found Laeda guilty of three counts of Promoting a Dangerous Drug in the First Degree (Counts I, III, and VI) and three counts of Prohibited Acts Related to Drug Paraphernalia (Counts II, V, and VIII) and acquitted Laeda of Counts IX (Promoting a Dangerous Drug in the First Degree) and XI (Prohibited Acts Related to Drug Paraphernalia). At the request of defense counsel, the circuit court polled the jury and separately questioned Juror No. 7 again. The circuit court asked Juror No. 7 what was his understanding of the verdicts returned by the jury. Juror No. 7 answered, "[t]hey decide to let me stay with them." The circuit court then directly

asked Juror No. 7, "[d]id you decide whether defendant's guilty or not guilty?" Juror No. 7 responded, "[y]es I did." The court asked, "guilty or not guilty?" Juror No. 7 responded "[g]uilty" and affirmed that verdict as to all counts where the jury found Laeda guilty. Neither Laeda nor the State objected at that time, although defense counsel maintained that he would be appealing the verdict.

On December 6, 2004, Laeda moved for a new trial based, in part, on the purported misconduct of Juror No. 7. The motion was supported by an affidavit sworn by Juror No. 11, who stated that Juror No. 7 admitted to not understanding the proceedings during trial and informed the other jurors that he would follow the other jurors' decision.[3] On December 15, 2004, the State filed its opposition. At the December 23, 2004 hearing, the circuit court denied the motion.

Prior to Laeda's sentencing, the State filed motions for mandatory terms of imprisonment and for extended terms of imprisonment. On January 19, 2005, the circuit court sentenced Laeda to the following:

> *Counts I, III, and VI:* twenty years of imprisonment as to each count, with a mandatory minimum of six years and eight months under HRS § 706–606.5 [(Supp. 2005)] and a mandatory minimum of ten years under HRS § 712–1241(3) ( [Supp.] 2002) as to each count.

*Counts II, V, and VIII:* five years of imprisonment as to each count.[4]

The circuit court filed its Amended Judgment of Conviction and Sentence on February 4, 2005. Laeda timely appealed.

## II.

### A. Motion for New Trial Based on Juror Misconduct

■ As a general matter, the granting or denial of a motion for new trial is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion. The same principle is applied in the context of a motion for new trial premised on juror misconduct.

The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant.

. . . .

. . . Because the right to an impartial jury in a criminal trial is so fundamental to our entire judicial system, . . . a criminal defendant is entitled to twelve impartial jurors. Thus, the trial court must grant a motion for new trial if any member (or members) of the jury was not impartial;

---

3. There is no explanation as to how the affidavit of Juror No. 11 was obtained. Rule 3.5(e)(4) of the Hawai'i Rules of Professional Conduct states:

**Rule 3.5. IMPARTIALITY AND DECORUM OF THE TRIBUNAL.**
. . . .
(e) **Communication with Jurors.** A lawyer shall not:
. . . .
(4) after dismissal of the jury in a case with which the lawyer is connected, communicate with a juror regarding the trial except that:
(i) upon leave of the court, which leave shall be freely granted, a lawyer may ask questions of, or respond to questions from, jurors about the trial . . .; and
(ii) upon leave of the court for good cause shown, a lawyer who believes there are grounds for legal challenge to a verdict may conduct an in-court examination of jurors or former jurors to determine whether the verdict is subject to challenge.

The record on appeal lacks any indication that Laeda's trial counsel sought or received leave of court to contact Juror No. 11 or to obtain an affidavit from that juror.

4. The circuit court further ordered:

(1) the sentences for Counts I, II, III, V, and VIII were to run concurrently with each other, but consecutive to Count VI;
(2) the mandatory minimum terms of imprisonment imposed pursuant to HRS § 706–606.5 were to run concurrently with each other and concurrently with the mandatory minimum terms imposed under HRS § 712–1241(3) (2002);
(3) the mandatory minimum terms of imprisonment as to Counts I and III, imposed pursuant to HRS § 712–1241(3), were to run concurrently with each other, but consecutively to the mandatory minimums imposed under HRS § 712–1241(3) as to Count VI; and
(4) the crime victim compensation fee was waived because Laeda would be incarcerated and unable to pay and Laeda was to receive credit for time served.

failure to do so necessarily constitutes an abuse of discretion.

*State v. Augustin,* 89 Hawai'i 215, 219, 971 P.2d 304, 308 (App.1998) (brackets omitted) (quoting *State v. Furutani,* 76 Hawai'i 172, 178–79, 873 P.2d 51, 57–58 (1994)).

## B. Admissibility of Evidence

■ In *State v. West,* 95 Hawai'i 452, 24 P.3d 648 (2001), the Hawai'i Supreme Court stated:

> [D]ifferent standards of review must be applied to trial court decisions regarding the admissibility of evidence, depending on the requirements of the particular rule of evidence at issue. When application of a particular evidentiary rule can yield only one correct result, the proper standard for appellate review is the right/wrong standard. However, the traditional abuse of discretion standard should be applied in the case of those rules of evidence that require a "judgment call" on the part of the trial court. *Kealoha v. County of Hawaii,* 74 Haw. 308, 319–20, 844 P.2d 670, 676, *reconsideration denied,* 74 Haw. 650, 847 P.2d 263 (1993). "[T]he trial court's determination of preliminary factual issues concerning the admission of evidence will be upheld unless clearly erroneous." *State v. McGriff,* 76 Hawai'i 148, 157, 871 P.2d 782, 791 (1994) (citation omitted). Finally, "the interpretation of the HRE [Hawaii Rules of Evidence] entails a question of law reviewable de novo." *State v. Gano,* 92 Hawai'i 161, 166, 988 P.2d 1153, 1158 (1999).

95 Hawai'i at 456–57, 24 P.3d at 652–53.

## C. Constitutional Questions

■ "We answer questions of constitutional law by exercising our own independent judgment based on the facts of the case, and thus, questions of constitutional law are reviewed on appeal under the right/wrong standard." *State v. Rivera,* 106 Hawai'i 146, 155, 102 P.3d 1044, 1053 (2004) (internal quotation marks and citation omitted) (quoting *State v. Kaua,* 102 Hawai'i 1, 7, 72 P.3d 473, 479 (2003)).

## III.

### A. The circuit court did not abuse its discretion when it denied Laeda's Motion for a New Trial.

■ Laeda contends the circuit court abused its discretion by denying his Motion for a New Trial and erred when it concluded that HRE Rule 606(b) precluded the consideration of Juror No. 11's post-verdict affidavit, which purported to demonstrate Juror No. 7's incompetence to participate in deliberations and render a verdict. In support of his Motion for a New Trial, Laeda proffered Juror No. 11's affidavit, in which Juror No. 11 stated in relevant part:

> [W]e were informed by one of the other jurors, [Juror No. 7,] that he did not understand any of the proceedings which had transpired [during the trial]. He tried to alert the Judge who basically told him to "try his best" to understand the case. When [Juror No. 7] returned to the Jury Room, he informed us that he "still didn't understand, but he would follow everybody else because he tried to let the Judge know, but still couldn't be excused."

In ruling the affidavit inadmissible, the circuit court relied on HRE Rule 606(b), which provides:

> **Rule 606   Competency of juror as witness.**
>
> . . . .
>
> (b) Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify concerning the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. Nor may the juror's affidavit or evidence of any statement by the juror indicating an effect of this kind be received.[5]

(Footnote not in original.)

In his opening brief, Laeda notes that case law in the United States Court of Appeals for

---

**5.** The Commentary to Hawaii Rules of Evidence Rule 606 provides in part:

the Second Circuit (Second Circuit) permits an exception to this rule in instances where there is "clear and incontrovertible evidence of incompetence shortly before or after [6] jury service, clear evidence of some criminal act or evidence of some 'objective fact' of internal impropriety." *United States v. Dioguardi*, 492 F.2d 70, 79 (2d Cir.), *cert. denied*, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 112 (1974) (footnote in original omitted; above footnote added). Laeda also cites a New York case, *Sullivan v. Fogg*, 613 F.2d 465, 467 (2d Cir. 1980), for the proposition that strong evidence of juror misconduct can trigger an inquiry by the court into the jury's internal deliberative processes.

In *Dioguardi*, Dioguardi received a letter, about ten days after the trial, from a juror. 492 F.2d at 75. In the letter, the juror claimed to have clairvoyant powers. *Id.* The Second Circuit declined to consider the letter as sufficient evidence to warrant further inquiry into the juror's mental processes and reiterated the rule that "only clear evidence of a juror's incompetence to understand the issues and to deliberate at the time of his service requires setting aside a verdict." *Id.* at 78–79. The Second Circuit further stated:

> With respect to post-verdict evidence of possible juror incompetency during the trial, courts have refused to set aside a verdict, or even to make further inquiry, un-

less there be proof of an adjudication of insanity or mental incompetence closely in advance of the time of jury service.[13] Only when proof of this nature has been offered, or proof of a closely contemporaneous and independent posttrial adjudication of incompetency,[14] have courts conducted hearings to determine whether the disability in fact affected the juror at the time of trial.

But absent such substantial if not wholly conclusive evidence of incompetency, courts have been unwilling to subject a juror to a hearing on his mental condition merely on the allegations and opinions of a losing party.

13. See *Anderson v. State*, 54 Ariz. 387, 96 P.2d 281 (1939); *Grand Lodge A.O.U.W. of Ark. v. Wood*, 113 Ark. 502, 168 S.W. 1070 (1914); *Austin v. People*, 106 Colo. 506, 107 P.2d 798 (1940); *Brown v. State*, 219 Ark. 647, 243 S.W.2d 938 (1951); *Ex parte Lovelady*, 152 Tex.Cr.R. 93, 207 S.W.2d 396 (Tex.Cr.App.1947), *cert. granted*, 333 U.S. 867, 68 S.Ct. 787, 92 L.Ed. 787[1144], *cert. dism.*, 333 U.S. 879, 68 S.Ct. 914, 92 L.Ed. 1154 (1948); *Durham v. State*, 182 Tenn. 577, 188 S.W.2d 555 (1945); *State v. Bucy*, 104 Mont. 416, 66 P.2d 1049 (1937); *Eastman Kodak Stores, Inc. v. Summers*, Mo.App., 377 S.W.2d 476 (Kan. C[ity] C.A.1964).

Subsection (b): Under traditional English common law, the general competency of a juror to testify as a witness had one limitation: he was barred from giving testimony to impeach his own verdict. *See* McCormick[, Evidence] § 68 [(2d ed.1972)]; *Vaise v. Delaval*, 1 T.R. 11, 99 Eng. Rep. 944 (K.B.1785). "The values sought to be promoted," according to the Advisory Committee's Note to the original proposal for federal Rule 606(b), "include freedom of deliberation, stability and finality of verdicts, and protection of jurors against annoyance and embarrassment." However, the blanket prohibition also bars testimony relevant to misconduct, irregularities, and improper influences external to the process of deliberation. The intent of this subsection is to strike a proper balance by excluding testimony relating to the internal deliberative process and allowing testimony about objective misconduct and irregularities. No attempt is made to specify substantive grounds for setting aside verdicts.

The Advisory Committee's Note to the original federal proposal, upon which subsection

(b) is modeled, said: "The trend has been to draw the dividing line between testimony as to mental processes, on the one hand, and as to the existence of conditions or occurrences of events calculated improperly to influence the verdict, on the other hand, without regard to whether the happening is within or without the jury room.... The jurors are the persons who know what really happened. Allowing them to testify as to matters other than their own reactions involves no particular hazard to the values sought to be protected. The rule is based upon this conclusion." For example, under this rule jurors would be competent to testify to the consumption of alcoholic beverages by deliberating jurors, a matter which under some circumstances may be cause for setting aside a verdict, *see Kealoha v. Tanaka*, 45 [Haw.] 457, 370 P.2d 468 (1962). A similar rule is found in Cal. Evid.Code § 1150.

6. In Laeda's opening brief, defense counsel misquotes this word as "during."

[14] See *Jordan v. Massachusetts*, 225 U.S. 167, 32 S.Ct. 651, 56 L.Ed. 1038 (1912), *aff'g Commonwealth v. Jordan*, 207 Mass. 259, 93 N.E. 809 (1911); *State v. Camp*, 110 W.Va. 444, 158 S.E. 664 (1931); *Burik v. Dundee Woolen Co.*, 66 N.J.L. 420, 49 A. 442 (1901); *Iverson v. Prudential Ins. Co. of Amer.*, 126 N.J.L. 280, 19 A.2d 214 (1941); *State v. Welty*, 65 Wash. 244, 118 P. 9 (1911).

492 F.2d at 80.

The juror affidavit proffered by Laeda does not demonstrate clear evidence of incompetence on the part of Juror No. 7, but merely rehashes the same issues raised and dealt with during the trial relating to Juror No. 7's difficulty in keeping up with deliberations.

In *Sullivan*, about a month after the trial, a juror complained to the district attorney about how the juror felt harassed by "voices" he was hearing. 613 F.2d at 466. The juror testified, at a hearing ordered by the trial court, that he had heard "vibrations" and voices throughout the trial and in the jury room. *Id.* The trial court ordered the juror to be examined by a court-appointed psychiatrist. *Id.* The court-appointed psychiatrist opined that the juror had a "schizoid personality with paranoid features ... vulnerable to a paranoid psychotic decompensation," but had been a competent juror. *Id.* The trial court did not allow Sullivan to present any psychiatric testimony or to cross-examine the court-appointed psychiatrist. *Id.* On appeal, Sullivan contended that "although it might have been proper not to grant any hearing at all, once a further inquiry was ordered, [Sullivan] should at least have been allowed to present his own witness and conduct a cross-examination." *Id.* The Second Circuit held there was a sufficient showing of the juror's incompetence during trial and deliberations to require a further inquiry by the trial court and Sullivan should have been allowed to cross-examine the court-ordered psychiatrist regarding the juror's competence. *Id.* at 467–68. The Second Circuit remanded the case to allow Sullivan to cross-examine the court-appointed psychiatrist, with no further evaluation or inquiry of the juror. *Id.* at 468.

In the instant case, the affidavit proffered by Juror No. 11 falls far short of the "strong evidence" of incompetence necessary to merit a further inquiry. *Dioguardi*, 492 F.2d at 78. The circuit court judge questioned Juror No. 7 during deliberations and polled him individually post-verdict, both times concluding that the juror was competent to participate in deliberations. Counsel for both parties observed the questioning and were afforded the opportunity to participate.

The plain language of HRE Rule 606(b) prohibits juror testimony as to the internal mental processes of other jurors, and the circuit court did not err in so ruling. Under Hawai'i case law, a juror is competent to testify as to objective juror irregularities or misconduct, but not as to the subjective effects of those irregularities on another juror's thoughts in reaching the verdict.[7] *Stratis v. Pacific Ins. Co.*, 7 Haw.App. 1, 6–7, 739 P.2d 251, 254–55 (1987). The proffered affidavit of Juror No. 11 refers to statements made by Juror No. 7 that Juror No. 7 did not understand the proceedings and "would follow everybody else." Both statements attributed to Juror No. 7 are not evidence of objective misconduct, but are statements made by Juror No. 7 as to his internal mental processes. Neither statement amounts to the type of objective misconduct warranting reversal or further inquiry. The circuit court did not err in excluding the affidavit pursuant to HRE Rule 606(b).

## B. Laeda's due process and fair trial rights were not violated.

■ Laeda argues that his constitutional rights to due process and a fair trial were

---

7. The Intermediate Court of Appeals defined such circumstances as including " 'intoxication, exposure to threats, acceptance of bribes, or possession of knowledge relevant to facts in issue obtained not through the introduction of evidence but acquired prior to trial or during trial through unauthorized views, experiments, investigations, news media, books or documents or through consultation with parties, witnesses or others, or through extra-record channels, regardless of whether the jury misconduct occurred within or without the jury room.' 3 J. Weinstein & M. Berger, *Weinstein's Evidence*, ¶ 606[04] at 606–29 through 606–32 (1985)[.]" *Stratis v. Pacific Ins. Co.*, 7 Haw.App. 1, 6, 739 P.2d 251, 255 (1987).

violated because Juror No. 7 was incompetent, unable to understand the proceedings, and unable to participate in deliberations.

It is well established that a "fair trial ... is guaranteed to the criminally accused by both the sixth amendment to the United States Constitution and article I, § 14 of the Hawai'i Constitution, as well as by principles of due process under both the state and federal constitutions." *State v. Furutani,* 76 Hawai'i 172, 179, 873 P.2d 51, 58 (1994) (internal quotation marks, citations, brackets, and footnote omitted). The right of an accused to a unanimous verdict in a criminal prosecution, tried before a jury in a court of this state, is guaranteed by Article I, §§ 5 and 14 of the Hawai'i Constitution. *State v. Arceo,* 84 Hawai'i 1, 30, 928 P.2d 843, 872 (1996).

In arguing that his rights to due process and a fair trial were violated, Laeda places great emphasis on the circuit court's comments that Juror No. 7's "statements were not made under oath," and "[a]lso, the statement of the Jury Foreperson was not made under oath." That emphasis is misplaced. Although the circuit court did take note of the circumstances under which the respective jurors made their statements, the circuit court did not rely on the lack of an oath in making its decision to deny Laeda's Motion for a New Trial. The circuit court noted that while Juror No. 7 did not make his statements under oath, "when the jury was polled [Juror No. 7] stated that he participated in juror deliberations and that his verdict was reflected in the jury's verdict." Indeed, directly following the above statements, the circuit court went on to state: "Regardless, any post verdicts [sic], statements, or testimony as to [Juror No. 7's] thought processes in reaching his verdict are not admissible under Rule 606B [sic] of the Hawaii Rules of Evidence. In fact, under this rule even evidence that a juror voted mistakenly would not be admissible." The circuit court declined to consider the affidavit of Juror No. 11 because it ran afoul of HRE Rule 606(b). Moreover, while the circuit court noted that Juror No. 7's in-court statements were not made under oath, the court, at trial, plainly had considered the juror's statements in assessing the juror's ability to comprehend the proceedings and participate in deliberations.

Neither party had objected to Juror No. 7's remaining on the jury, and both parties had agreed with the court as to the proper course of action to be taken.

The record in this case does not indicate that Juror No. 7 was incompetent, unable to understand the proceedings, and unable to participate in deliberations. Therefore, Laeda's argument that his constitutional rights to due process and a fair trial were violated is without merit.

## IV.

The Amended Judgment of Conviction and Sentence entered on February 4, 2005 in the Circuit Court of the Third Circuit is affirmed.