Joseph HAYDEN, Steven Baker and Steven Monsanto, Petitioners,

v.

UNITED STATES of America, Respondent.

Nos. 84 Civ. 7451 (WK), 84 Civ. 8566 (WK) and 84 Civ. 8507 (WK).

United States District Court, S.D. New York.

July 15, 1986.

Paul C. Goldberger, Goldberger & Dubin, P.C., New York, J. Jeffrey Weisenfeld, New York City, for petitioners.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. by Benito Romano, Executive Asst. U.S. Atty., Helen Gredd, Asst. U.S. Atty., for respondent.

### MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

Petitioners have filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2255, seeking to vacate their 1977 convictions and gain a new trial due to alleged jury tampering. Petitioners and the government have jointly undertaken discovery to ascertain what facts, if any, exist to substantiate the claim that co-defendant Guy Fisher bribed a juror in their trial. That process is now complete. Since insufficient evidence exists to warrant a hearing in which the individual jurors would be examined for evidence of taint, the petition is hereby dismissed.

### FACTS

On December 2, 1977 after a nine and a half week anonymous jury trial before the Honorable Henry F. Werker, the three petitioners and eight of their co-defendants—including Leroy "Nicky" Barnes—were convicted of various violations of federal narcotics and firearms laws. The jury hung as to Guy Fisher and acquitted the remaining two codefendants.

In 1983 Fisher and others were tried again for violations of the narcotics, firearms and racketeering laws. In support of its motion for an anonymous jury in that case, the Government disclosed statements reportedly made by Guy Fisher to Barnes and a confidential informant about the alleged bribing of a juror in the 1977 trial. In substance, Fisher reportedly told Barnes that someone known to Fisher was attending the trial and had recognized one of the jurors and that he (Fisher) intended to approach the juror. Fisher later told the informant that a female spectator at the trial, who was known to all three petitioners in the instant case, recognized a black female who had been seated in the jury box as a prospective juror. Shortly thereafter a meeting was held near the courthouse at which these petitioners and other defendants discussed raising $25,000 to be paid to a relative of the juror. This juror was allegedly a black female who worked in a hospital. The informant further reported that Fisher told him that $25,000 was paid to the juror in return for obtaining a hung jury for Fisher, and that to the informant's knowledge the juror had disappeared from New York after the trial. According to the Assistant United States Attorney who prosecuted the case, the only black female juror then employed in a hospital was Juror # 49, who was eventually seated as Juror # 2.

Since the filing of the instant petition, petitioners and the government have deposed Guy Fisher and three women identified by petitioners as possessing "valuable evidence" about the alleged bribe.

Fisher denied having tampered with the jury in any way.

Pat Pender, an acquaintance of both Fisher and petitioner Steven Baker testified that she attended the *Barnes* trial on one occasion and recognized one of the jurors as "Randy", a doorman in her building. However, she never reported this fact to Fisher or any of the other defendants except for Baker, who simply told her that it would be better not to mention the matter to anyone. Pender did testify that Ingrid Weeks told her that she (Weeks)

"knew someone who knew someone" on the *Barnes* jury.

Ingrid Weeks testified that she did not attend the *Barnes* trial, did not know any of the jurors and never had any discussion with anyone about the *Barnes* jury.

Dorothy Winchester testified that she neither attended the trial nor spoke to anyone about having a friend on the *Barnes* jury. She did, however, know two co-workers who may have been on some sort of jury duty during the relevant time period.

Petitioners seek an evidentiary hearing and the Government moves to dismiss.

## DISCUSSION

We shall assume, for the sake of this discussion, that if it could be established that a juror had been bribed, we would be justified in examining the jurors as to the deliberations leading up to their verdict.[1] Upon such assumption, the question presented is whether petitioners have made a showing sufficient to require a hearing as to whether or not bribery in fact occurred.

It is conceded that—with the full cooperation of the government—the petitioners have exhausted possibilities for discovery and have not come up with any evidence of jury tampering beyond what was presented by the Government in its application for an anonymous jury in 1983.

Although curiously neither party has produced—and our research has not disclosed—any cases dealing with what showing must be made to require an evidentiary hearing on a charge of jury tampering, the clearly established general rule with respect to attacks on jury verdicts is that hearings on such attacks are not justified in the absence of admissible evidence in support of the charge; and that hearsay is insufficient. *Dalli v. United States* (2d Cir.1974) 491 F.2d 758, 760 ("Mere generalities or hearsay statements will not normally entitle the applicant to a hearing ... (citations omitted) since such hearsay would be inadmissible at the hearing it-

self."); *D'Ercole v. United States* (2d Cir. 1966) 361 F.2d 211.

Petitioners have failed to cite any authority suggesting a contrary result. They seem principally to rely on three cases, *Remmer v. United States* (1954) 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654, *United States v. Barshov* (11th Cir.1984) 733 F.2d 842, 851, and *Sullivan v. Fogg* (2d Cir. 1980) 613 F.2d 465, 467. Each of these cases deals with the problem of whether certain concededly existing and admissible evidence was sufficient to support a charge of jury tampering. None of them has any remote bearing on the question of whether a defendant is entitled to a hearing on the sole basis of hearsay evidence.

Defendants also cite *Mutual Life Ins. Co. v. Hillmon* (1892) 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 and *United States v. Pheaster* (9th Cir.1976) 544 F.2d 353, 376 for the proposition that a declaration of intent may, in some circumstances be taken as evidence that the intended act was accomplished. So far as we can determine, the *Pheaster* case has no bearing whatever on this question. The key passage in *Mutual Life Ins. Co. of New York v. Hillmon* (1892) 145 U.S. 285 at 295–296, 12 S.Ct. 909 at 912–13, 36 L.Ed. 706 (emphasis supplied) is:

> The letters ... were competent not as narrative facts communicated to the writer by others, or yet as proof that he actually went away from Wichita, but as evidence that, shortly before the time *when other evidence tended to show that he went away,* he had the intention of going, and of going with Hillmon, which made it more probable both that he did go and that he went with Hillmon than if there had been no proof of such intention.

What is here lacking is any admissible evidence whatever tending to show what Fisher may actually have done. Moreover, such evidence as there is does not in any way support Fisher's hearsay statement.

---

1. This point is not conceded, indeed it is hotly contested by the Government.

We are aware of the difficulty petitioners face in obtaining admissible evidence tending to corroborate Fisher's statements, the truth of which was originally vouched for, at least implicitly, by their being offered in support of the Government's motion for an anonymous jury. However, in our view, there must be a proffer of admissible evidence before an inquiry into a jury's deliberations can be said to be justified. *See Dalli v. United States, supra.* In the absence of any such evidence we are compelled to deny the motion for a hearing and grant the Government's motion to dismiss the petition.

SO ORDERED.