**UNITED STATES of America, Plaintiff,**

**v.**

**Leonard SCHULTZ, Defendant.**

**Crim. No. 86–80236–01.**

United States District Court,
E.D. Michigan, S.D.

April 8, 1987.

As Corrected June 10, 1987.

James M. Wouczyna, Sp. Atty., Strike Force, Detroit, Mich., for plaintiff.

Robert S. Harrison, David N. Zacks, Birmingham, Mich., for defendant.

MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL OR, IN THE ALTERNATIVE, EVIDENTIARY HEARING

WOODS, District Judge.

This matter is before the Court on defendant's Motion for New Trial or, in the

Alternative, for Evidentiary Hearing. Defendant was convicted on February 10, 1987, on all three counts of an indictment alleging a conspiracy to possess with intent to distribute and to distribute cocaine, use of a telephone to facilitate the commission of the conspiracy, and interstate travel with the intent to promote and facilitate the promotion of a business enterprise involving cocaine.

Defendant alleges that one of the jurors ingested controlled substances so as to "materially and substantially impair [his] ability to intelligently understand and comprehend the evidence and legal instructions in this case and prevented an intelligent deliberation thereon, and did render him unfit to perform his duties as a juror." Defendant's motion at 2, ¶ 4.

How a Court deals with a serious allegation as this has implications going far beyond the individual case. On the one hand there are compelling reasons for protecting the secrecy and preserving the finality of jury deliberations, and thus excluding testimony by jurors about the process. As one commentator has noted:

> There are, however, valid and powerful reasons which support the exclusionary principle. The Supreme Court long ago singled out two reasons as being most important. First, the exclusionary principle is necessary to prevent jurors from being 'harassed and beset by the defeated party in an effort to secure ... evidence of facts which might establish misconduct sufficient to set aside a verdict.' Second, the exclusionary principle is necessary to prevent 'what was intended to be private deliberation' from being made subject to constant public scrutiny, 'to the destruction of all frankness and freedom of discussion and conference.'
>
> To these may be added a third and fourth reason: Third, allowing unrestricted attacks by jurors upon their verdicts would so undermine the finality of verdicts as to threaten the system itself; judges 'would become Penelopes, forever engaged in unraveling the webs they wove.' It is one thing to permit review on the basis of the record, by post-trial

motion and appeal; it is quite another to extend review to the deliberative processes of the jury. Such extension would amount to a whole new dimension of scrutiny which would correspondingly reduce the measure of finality which verdicts and judgments now achieve.

> Fourth, allowing unrestricted attacks by jurors upon their verdicts invites tampering with the process which would be difficult to detect. A single juror who reluctantly joined in a verdict is likely to be sympathetic to the overtures of defeated parties, and to be persuadable to the view that his own consent rested upon false or impermissible considerations; the truth will be hard to ascertain. In the process, the trier itself will be tried, all at the behest of a dissatisfied party aided by the second thoughts of a vaguely uncomfortable juror.

Mueller, *Jurors' Impeachment of Verdicts and Indictments in Federal Court Under Rule 606(b)*, 57 Neb.L.Rev. 920, 923–24 (1978) (footnotes omitted) [hereinafter Mueller]; *see also, e.g., Government of Virgin Islands v. Gereau*, 523 F.2d 140 (3d Cir.1975) (upheld trial court's finding that jurors' affidavits that their verdict was reached involuntarily because of external pressures were themselves the product of fear and intimidation), *cert. denied*, 424 U.S. 917, 96 S.Ct. 1119, 47 L.Ed.2d 323 (1976); *United States v. Homer*, 411 F.Supp. 972, 978–79 (W.D.Pa.) (if testimony allowed that jurors mistakenly thought that an unanimous verdict was not required, resulting harassment will have a chilling effect on persons called to serve on juries; court had already received concerned inquiries from other jurors asking why such questioning was permitted), *aff'd* 545 F.2d 864 (3d Cir.1976), *cert. denied*, 431 U.S. 954, 97 S.Ct. 2673, 53 L.Ed.2d 270 (1977).

On the other hand, "[to] the defendant who finds himself convicted in the face of patent jury misbehavior, the jurors who were his comfort become his nemesis." Note, *Judgment by Your Peers? The Impeachment of Jury Verdicts and the Case of the Insane Juror*, 21 N.Y.L.F. 57 (1975) [hereinafter Note, *Judgment by Your*

*Peers* ]. To a society which values the jury system and rule by law, it is almost inevitable, in order to avoid the kind of nightmares described so graphically in *Alice in Wonderland* or by Kafka, that defendants would be found to have a due process right to a "sane and competent jury"—as indeed they have been. *See Sullivan v. Fogg*, 613 F.2d 465, 467 (2d Cir.1980) (quoting *United States v. Dioguardi*, 492 F.2d 70, 78 (2d Cir.), *cert. denied*, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 112 (1974)).

There is no easy way to avoid the dilemma. To grant an evidentiary hearing is to open the door to all of the evils which have already been identified. Particularly when the request for a hearing comes after a verdict has been rendered, as here, the inquiry would not be directed to the present capacity of the juror but toward his capacity as of some time ago—almost two months in this case. In addition, since there has been a verdict rendered, the stakes are crystal clear, thus presenting motives for attempting to influence testimony, and for ex post facto revisions of impressions and memories in light of one's position about the outcome in the case. In this case, for instance, the 13 other jurors might well have to be questioned. If so, these jurors would become vulnerable to pressures from both sides. In addition, defendant's reliance on an expert and his chiding of the Government for not producing an expert of its own makes it virtually certain that the proceeding would become the kind of battle of experts which is not always illuminating, particularly because of the speculative nature of the issue. Inevitable publicity would, unavoidably, raise questions and concerns in the minds of other jurors—past, present, and future.

Thus, all of the concerns discussed above with regard to the sanctity and finality of jury deliberations counsel against readily granting a post-verdict evidentiary hearing, or summarily granting a new trial.

Where, as here, two powerful and valid policy imperatives are inherently in conflict a court must make a careful case-by-case determination of what is required in the given case. *See* Note, *Judgment by Your*

*Peers* at 83. In making this determination, both concerns must be given studied consideration.

■ Federal law rather than state law governs this issue. *Stephens v. City of Dayton, Tennessee*, 474 F.2d 997 (6th Cir. 1973). In addition to constitutional considerations (the Seventh Amendment right to an "impartial jury"; the Fifth Amendment guarantee against deprivation of liberty without due process of law), the Supreme Court has adopted the Federal Rules of Evidence, which provide some guidance. F.R.E. 606(b) provides:

> Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

This rule precludes proof that one or more jurors ignored or misunderstood instructions, were inattentive during trial or deliberations, sleeping or thinking about other matters, did not agree with or believe in the verdict, or misunderstood the requirement of a unanimous decision. See Mueller at 936–39 and cases cited therein.

In this case Juror Bryant contends: (1) he was not convinced beyond a reasonable doubt that Mr. Schultz was guilty of the offenses charged; (2) he voted guilty because he didn't know until after the verdict was rendered that he could have voted "not guilty" even though the rest of the jurors voted "guilty"; (3) that he called defense counsel in the afternoon of the day the

verdict was rendered (after talking with them earlier in the courthouse and a nearby restaurant) to tell him that he wanted to change his vote; (4) he concluded, six days later, in a conversation with one of the defense attorneys, that the reason he misunderstood the instructions was that he

> had been heavily medicated on prescribed narcotic medications throughout the trial and jury deliberations in the above-captioned matter, and that I believed the combination and quantities of these medications significantly impaired my ability to intelligently evaluate and comprehend the facts, evidence, and legal instructions given to me in my capacity as a juror, and that the combination and quantity of medication caused me great confusion and rendered me ineffective during the jury deliberation process.

Affidavit of Juror, Joe C. Bryant, Jr., dated February 19, 1987.

■ None of the first three contentions are admissible under F.R.E. 606(b). One Court has even held that information on the use of drugs (marijuana, cocaine, and alcohol) was inadmissible under F.R.E. 606(b). *U.S. v. Conover*, 772 F.2d 765, 770 (11th Cir.1985) (trial judge did not abuse his discretion by refusing to conduct an evidentiary hearing on claims by a juror that "the jury was one big party" because he had no duty to investigate the allegations as evidence of substance abuse is not admissible under either of the two exceptions of F.R.E. 606(b)), *cert. granted sub nom. Tanner v. U.S.,* —— U.S. ——, 107 S.Ct. 397, 93 L.Ed.2d 351 (1986). One of the questions presented on appeal of *Conover* is: "Does sworn evidence that jurors in complex criminal case consumed drugs and alcohol throughout proceeding, rendering them unable to review facts, require evidentiary hearing to determine whether defendants were afforded fair trial by jury capable of deciding case on evidence presented?" —— U.S. ——, 107 S.Ct. 397, 93 L.Ed.2d 351 (1986). Regardless of how the Supreme Court answers that question, this Court believes that *Conover* gave inadequate consideration to the defendants' right to a competent jury, and thus employed too narrow a reading of the excep-

tions in F.R.E. 606(b). It is this Court's determination that use of drugs to the point of incapacity can be an "outside influence . . . improperly brought to bear upon any juror."

To find, however, that *any* or *every* such allegation would require an evidentiary hearing would, in this Court's opinion, swing too far in the other direction, and ignore the powerful reasons for protecting the secrecy and conclusiveness of the jury deliberations. Therefore, the question becomes whether enough evidence has been presented to require an evidentiary hearing in the first instance, let alone a new trial. *See Government of Virgin Islands v. Nicholas,* 759 F.2d 1073, 1078 (3d Cir.1985). The Second Circuit gives the following test for determining whether a hearing is required:

> Improper external influences such as jury tampering are presumptively prejudicial. A showing of "reasonable grounds" to believe that there has been tampering will trigger a post-verdict exploration of the "entire picture." Where the allegations involve considerations internal to the jury deliberation process, such as juror insanity, this court has required "strong evidence that it is likely that the juror suffered from such incompetence" before ordering a post-verdict inquiry. This high threshold is intended to avoid post-verdict harassment of jurors, preserve the finality of judgments, discourage meritless applications for post-verdict hearings, and reduce the likelihood of and temptation for jury tampering.

*Sullivan v. Fogg,* 613 F.2d 465, 467 (2d Cir.1986) (citations omitted). This Court has determined that the same standard used in *Sullivan* ("strong evidence that it is likely that the juror suffered from such incompetence") is appropriate in this case. Where purely subjective judgments are involved, the difficulty of ascertaining impairment and the ease of external shaping or manipulating of such testimony requires that a high threshold be maintained for the protection of the jury and the jury system. And, as one Court has noted:

... an accused is entitled to a rational juror, but he cannot insist upon a perfect specimen. The citizenry differ in their general mental capacity, stability, anxieties, and ability to deal with stress. The juror cannot be regarded as incompetent unless at the time she was incompetent to understand the issues and to conduct deliberation.

*U.S. v. Hall,* 536 F.2d 313, 323 (10th Cir.) (evidence would have had to clearly establish incompetence to show that trial judge erred in refusing to excuse juror during the course of deliberations), *cert. denied,* 429 U.S. 919, 97 S.Ct. 313, 50 L.Ed.2d 285 (1976).

The evidence of impairment presented by defendant in this motion consists of the following:

two affidavits by Juror Bryant detailing the alleged quantities and effects of prescription medications taken during the course of trial and jury deliberations; an affidavit by Saul Forman, M.D., on the likely effects of the quantities and types of medications allegedly taken by Juror Bryant; and

an affidavit by David Zacks, one of the defense counsel, to the effect that the juror "appeared to be extremely sedated, confused, and slow in response to questions posed ..." when he spoke with him immediately after the verdict.

There are a number of undisputed facts which must be considered in evaluating whether these affidavits constitute "strong evidence that it is likely that the juror was incompetent." Immediately before the verdict was read in open court each juror was admonished to listen carefully to the verdict as they would be asked: "Was this and is this your verdict?" They were polled afterwards and all answered affirmatively. The jurors were then dismissed and, after a few minutes conversation with the Court, during which they were told they were free to talk or not to talk to anyone they wished about the case, they were excused. A conversation immediately thereafter between Juror Bryant, defense attorneys Harrison and Zacks, and Special Agent Carone began in the hall outside the courtroom, and repaired to a nearby restaurant.

Before leaving the courthouse Bryant indicated that he had not thought that the defendant was proved guilty beyond a reasonable doubt.[1] At the beginning of the conversation in the restaurant Harrison said that it was too bad that the jury had found the defendant guilty because if the defendant had been found not guilty, the defendant would have thrown a magnificent party to which all of the jurors would have been invited. (Zacks and Bryant, in virtually identical language, contend that the statement was "made in jest.") While Zacks disputes Carone's contention that Bryant was "alert and able to intelligently discuss all details of the trial" during the conversation in the restaurant, he does not dispute that Bryant never did indicate during that conversation that he "had been under a doctor's care, was taking medication, or was not aware of the events occurring around him." Nor did Zacks or anyone else on behalf of defendant dispute that Bryant was asked and answered many technical questions dealing with his area of employment, electronics, which would necessarily be of some moment and interest as telephone taps, intercepted telephone calls and recordings were a major factor in the Government's case. All in all, there is strong evidence of considerable give-and-take communication between Bryant, defense counsel, and Agent Carone—and all within an hour or two immediately following the jury deliberation process.

Bryant has maintained in two different affidavits, and apparently during a number of discussions with Harrison, Zacks, Carone, and Special Agent Orlin Lucksted (whose affidavit was also submitted by the government), that he is firm in his belief that Schultz' guilt was not proved beyond a reasonable doubt; that he apparently believed and continues to believe, and has made quite clear, that he was able to evalu-

---

**1.** There is a dispute as to whether he said he had changed his mind or not before the jury came to a decision.

ate the evidence in a competent manner in order to reach that very conclusion. In fact, in his first affidavit he states that he offered his affidavit to "somehow help redress the tragic mistake I made in voting 'guilty.'" This Court cannot help but be struck by the inherent inconsistency of Bryant's statements in claiming that he was impaired during the trial—yet was able to evaluate the evidence and reach his earlier and present conclusion that defendant was and is not guilty.

Also uncontroverted is the fact that Juror Bryant drove his van to and from the courtroom each day, apparently without incident. This necessitated driving during times of heavy traffic, as court convened each day at 8:00 or 8:30 a.m. Juror Bryant, when asked on the juror questionnaire, "Do you have any physical or mental impairment that would interfere with or prevent you from serving as a juror?", checked the box for "No." During the course of trial, the Court, who watched the jury closely for signs of inattentiveness or drowsiness, never noticed any such signs in Juror Bryant. Nor has anyone else reported seeing any such evidence.

It is additionally to be noted that Juror Bryant successfully negotiated what might be best characterized as a searching voir dire examination lasting over three hours, giving responsive answers to all questions—and he was not excused either for cause (as were 18 potential jurors) or preemptorily (as were 12 potential jurors).

Finally, Dr. Forman has never met or treated Bryant.

Juror Bryant has never suggested that he took his duties lightly or that he feels that he was unable to evaluate the evidence to reach a valid verdict of guilt or innocence—rather that his ability to intelligently evaluate and comprehend the facts, evidence and legal instructions given was impaired and that he was ineffective during the jury deliberation process. While this would not in itself be admissible, the Court feels a duty to look at the totality of circumstances and to consider that contention in light of all the evidence available, because of the allegations that his inability to deliberate effectively was drug-induced. But we note again the contradiction in Juror Bryant's statements: his initial—and continued—conviction that he was not convinced beyond a reasonable doubt that defendant was guilty of the offenses charged reasonably and necessarily implies that he was able to and did make, indeed, an evaluation of the evidence.

Bryant has filed two affidavits in support of defendant's motion. The first is dated February 19, 1987, and the second March 26, 1987.[2] The affidavits taken on their face raise questions about the story they purport to tell. For instance, Bryant, particularly in the second affidavit, is very sure about just what was and was not said at various times by various people—including the conversation *immediately following* the polling of the jury. Yet he claims that he was unable to understand *until that conversation* that he could have voted "not guilty":

> That during the conversation with Special Agent Michael Carone, Robert S. Harrison, and David N. Zacks, referred to in Paragraph 2 above, I understood for the first time much to my surprise that the verdict reached in the above-captioned matter need *not* have been unanimous, and that I could have, had I chosen to do so, voted "not guilty" even though my fellow jurors had voted "guilty". Had I known that the verdict need not have been unanimous prior to the time the jury was polled in open Court, I would have in fact voted "not guilty" as to each of the three (3) Counts contained in the Indictment, as I was not convinced beyond a reasonable doubt

2. It might be noted that although the first affidavit by Bryant includes a statement that "this Affidavit was drafted at my own suggestion and request, and not at the request or suggestion of Robert S. Harrison, David N. Zacks, or Leonard Schultz," both are replete with phrases and expressions which sound strongly typical of lawyers' drafting. ("Mr. Zacks inquired as to what specific medications and amounts I had ingested throughout the period of trial and jury deliberations in the above-captioned matter"; "my ingestion of the above-referenced narcotic medications"; certain paragraphs in Carone's affidavit are "wholly inaccurate and erroneous for the reason that. . . .")

1224

that Mr. Schultz was guilty of the offenses alleged in the Indictment.

It is not credible to the Court that someone so impaired as to be unable to realize that he was to vote his conscience, given the repeated and explicit instructions of the Court on that matter during jury instructions (which were also given in writing to the jurors to use during deliberations), and the way in which the jury was polled, could, so soon afterwards, be so clear of mind as to be able to realize his error, and remember in detail who said what and when during that conversation.[3]

In the second affidavit Bryant avers that he was then able to recall specifically previously-forgotten details about the kinds and amounts of drugs he ingested during the trial and deliberations. If these statements are taken at face value, they support a conclusion that, if he can now recall all these details (6 weeks later), he was not so impaired at the time of trial and deliberations that he could not have evaluated the evidence or deliberated. These statements, especially in conjunction with his statement in that same affidavit that the amounts stated in the previous affidavit were *minimum* amounts (his emphasis), suggest that this is a story which is being progressively embellished by Juror Bryant. In fact the statements taken in their entirety bear the

indicia of a web of tailored and progressive posturing designed to subvert the jury's intent and the sanctity of a validly-arrived-at verdict.

Juror Bryant seems to be just the type of juror referred to by Mueller: "A single juror who reluctantly joined in a verdict is likely to be sympathetic to the overtures of defeated parties, and to be persuadable to the view that his own view rested upon false or impermissible considerations."

When the Court is presented with difficult and potentially volatile matters as here, it behooves the Court and indeed is the *responsibility* and duty of the Court, to heed its own instructions to the jury, as in this case:

... in your consideration of the evidence, you are not limited to the bald statements of the witnesses.... you are not limited solely to what you see and hear as the witnesses testify. You are permitted to draw, from facts which you find have been proved, such reasonable inferences as you feel are justified in the light of experience.

Excerpt from Devitt and Blackmar, *Federal Jury Practice and Instructions*, § 11.-11. And that is precisely what this Court has attempted to do in its analysis of the

---

3. These instructions included, in part, the following statements. They are all from Devitt and Blackmar, *Federal Jury Practice and Instructions*. Specific sections are indicated in parentheses following each instruction.

Both the accused and the public expect that you will carefully and impartially consider all the evidence in the case, follow the law as stated by the Court and reach a just verdict, regardless of the consequences. (§ 11.03)

After weighing all the evidence, if you are not convinced of the guilt of the defendant beyond a reasonable doubt, you must find him not guilty. (§ 15.02)

So if the jury, after careful and impartial consideration of all the evidence in the case, has a reasonable doubt as to whether a defendant is guilty of the charge, it must acquit. If the jury views the evidence in the case as reasonably permitting either of the two conclusions—one of innocence, the other of guilt—the jury should of course adopt the conclusion of innocence. (§ 11.14)

If the accused be proved guilty beyond reasonable doubt, say so. If not so proved, say so.

Remember also that the question before you can never be: will the Government win or lose the case? The Government always wins when justice is done, regardless of whether the verdict be guilty or not guilty. (§ 15.01) But if any reasonable doubt remains in your minds after impartial consideration of all the evidence in the case, it is your duty to find the accused not guilty. (§ 11.06)

It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for himself, but do so only after an impartial consideration of the evidence in the case with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict. (§ 18.01)

issues presented—to weigh and balance all the evidence before it in light of the competing policy interests.

Once that is done it becomes clear that what has been presented is not strong evidence that it is likely that Juror Bryant was impaired. Bryant's statements themselves are internally inconsistent and not supported by external facts. Dr. Forman's testimony is not based on any personal knowledge of Bryant; is based on an acceptance of a bald statement (albeit an affidavit by Juror Bryant), and is, therefore, hardly strong evidence of anything determinative. Zacks' testimony is hardly disinterested, is not very specific, does not necessarily indicate impairment, is controverted by Special Agent Carone's testimony and, to the extent it does indicate impairment, is inconsistent with uncontroverted facts.

It is not necessary for this Court in deciding this motion to speculate on or determine precisely who is telling the whole truth about what in this matter, or what testimony has been tailored by whom, nor is it necessary for this Court to determine what the effects in general are of taking the types and quantities of medications allegedly taken by Bryant. It is enough that the Court has determined through a comparison and analysis of the statements presented by both sides that defendant has failed to present sufficient probative and believable evidence that it is likely that this juror was so impaired at the time of trial and jury deliberation as to warrant an evidentiary hearing or a new trial.

Therefore, IT IS HEREBY ORDERED that defendant's motion be DENIED.

So ordered.