OPINION OF THE COURT
Ellen M. Coin, J.
*502 By jury verdict on March 2, 2004, defendant was convicted of nine counts of petit larceny arising out of his theft of items from Ground Zero.[1] He has moved for an order pursuant to Criminal Procedure Law § 330.30 (2) setting aside the verdict on the ground that a juror was intoxicated during deliberations. In support of his motion, defendant submitted his affidavit, together with affidavits from his wife, his brother and the affirmation of his trial counsel. The People, in opposition, responded with a memorandum of law in which they argued that the circumstances and timing of the deliberations negated defendant’s allegations and that no hearing was required. The court directed that a hearing be held on the motion.
At the hearing, defendant, without objection by the People, called five of the six trial jurors, including juror number 4, the juror alleged to have been intoxicated.[2] In addition, defendant, his wife, brother and trial attorney testified. The People called no witnesses. The case was adjourned to afford counsel an opportunity to submit memoranda of law on the issues implicated by the motion and hearing.
Findings of Fact
The testimony at the hearing established that on the last day of trial, March 2, 2004, the jury heard summations and the court’s final instructions. The jurors then retired to the jury room, where they were served lunch and began their deliberations. Prior to reaching its verdict the jury sent two notes to the court. Neither note made any reference to juror number 4. After each note was delivered to the court, the jury returned to the courtroom for further instructions. The jury reached its verdict in the late afternoon, around 5:00 p.m. At the request of defense counsel, the jury was polled, and each juror stated that the verdict announced by the foreperson was his/her verdict.
After the verdict was rendered, defendant, his wife, brother and attorney left the courtroom but remained in the courthouse. About 15 to 20 minutes after most of the jurors had left the courtroom, juror number 4 approached defendant, who was sitting with his brother and his wife in the hallway nearby, and told him how sorry he was that the jury had found defendant guilty. He spoke with defendant for several minutes in the *503 hallway. He was unsteady on his feet, his eyes were glassy, and his breath smelled of alcohol. The juror then came over to defense counsel, saying that he was concerned about the defendant, that he had a lot of friends who were firefighters, and that he was sorry about the verdict. He asked defense counsel about the case, and talked about other cases.
When the elevator arrived, defendant, his family and attorney entered, as did juror number 4, who continued talking with defense counsel there and outside the courthouse.
Conclusions of Law
Consideration of Juror Testimony
Federal Rules of Evidence rule 606 (b) directs that a juror may not testify “as to any matter or statement occurring during the course of the jury’s deliberations” except in cases when an inquiry into extraneous prejudicial information or improper outside influences on the jury is necessary. Although New York has not adopted a statute similar to rule 606 (b), state common law “is consonant with its underlying principles.” (Sharrow v Dick Corp., 86 NY2d 54, 61 [1995] [citations omitted]; see People v Maragh, 94 NY2d 569 [2000]; People v Brown, 48 NY2d 388 [1979].)
The policy considerations underlying this rule are to insure the finality of verdicts, prevent juror harassment by disappointed litigants or their attorneys, and encourage “frankness and freedom of discussion and conference” among the jurors. (Sharrow v Dick Corp., 86 NY2d at 61.)
This is not the first time that a court has been confronted with the issue of whether to consider juror testimony upon allegations of misconduct involving the use of alcohol. In Tanner v United States (483 US 107 [1987]), the defendants moved for a new trial upon allegations that during the trial members of the jury consumed alcohol, smoked marijuana regularly, ingested cocaine, sold marijuana to one another, fell asleep and were self-described as “flying.” (483 US at 116.) Attached to the motion was the sworn, transcribed interview of one juror, detailing the allegations, who stated that he “felt like . . . the jury was on one big party.” (483 US at 115.) The Supreme Court concluded that the trial court properly determined juror testimony inadmissible to impeach the verdict, rejecting the defendants’ argument that substance abuse constitutes an improper “outside influence” about which jurors may testify under rule 606 (b). “However severe their effect and improper their use, drugs or alcohol voluntarily ingested by a juror seems no more *504 an ‘outside influence’ than a virus, poorly prepared food, or a lack of sleep.” (483 US at 122.)
This state’s courts have barred juror affidavits and testimony when confronted with similar allegations of juror incompetence. (Cf. People v Whitfield, 265 AD2d 894 [4th Dept 1999], lv denied 94 NY2d 868 [1999] [juror may not impeach verdict with allegation that she suffered panic attack in deliberation room]; People v Washington, 158 AD2d 980 [4th Dept 1990] [holding inadmissible affidavit of juror citing illness of another juror].)
Similarly, the federal courts have barred juror testimony to establish juror incompetence. (See e.g., Bell v Ozmint, 332 F3d 229 [4th Cir 2003], cert denied 540 US 1153 [2004] [affirming exclusion of juror testimony regarding juror consumption of alcohol]; United States v Delgado, 1989 WL 18135 [9th Cir, Feb. 28, 1989] [affirming exclusion of juror affidavit or testimony regarding juror’s use of “speed”].)
While the testimony of the five jurors was elicited by defense counsel without objection by the People, there are strong policy reasons to preclude its consideration by the court in determining this motion. “[W]e do not wish to encourage the posttrial harassing of jurors for statements which might render their verdicts questionable. With regard to jury room deliberations, scarcely any verdict might remain unassailable, if such statements were admissible.” (People v De Lucia, 20 NY2d 275, 278 [1967].) There is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it. Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process. (Tanner v United States, 483 US at 120.)
Moreover, as the Supreme Court noted in Tanner, a defendant’s Sixth Amendment interests in an unimpaired jury are protected by several aspects of the trial process. First, the suitability of an individual for the responsibility of jury service is examined during voir dire. Secondly, during the trial the jury is observable by the court, counsel and court personnel. In addition, jurors are observable by each other, and may report inappropriate juror behavior to the court before they render a verdict. Further, after a trial a party may seek to impeach the verdict by nonjuror evidence of misconduct. (Tanner v United States, 483 US at 127.)
*505 The court concludes that the jurors’ testimony regarding their observations of juror number 4 during deliberations and the latter’s testimony regarding his consumption of alcohol may not be considered by the court in determining this motion.[3]
Defendant’s Burden
At a hearing upon a motion pursuant to CPL 330.30 (2) the defendant has the burden of proving by a preponderance of the evidence every fact essential to support the motion. (CPL 330.40 [2] [g].) The court may set aside the verdict if “during the trial there occurred, out of the presence of the court, improper conduct by a juror . . . which may have affected a substantial right of the defendant and which was not known to the defendant prior to the rendition of the verdict . . . .” (CPL 330.30 [2].)
In addressing motions such as the instant, it is well-settled that “ ‘[a]bsent a showing of prejudice to a substantial right . . . proof of juror misconduct does not entitle a defendant to a new trial’ (People v Irizarry, 83 NY2d 557, 561 [1994]).” (People v Rodriguez, 100 NY2d 30, 35 [2003].) “We apply this standard because ‘not every misstep by a juror rises to the inherently prejudicial level at which reversal is required automatically’ (People v Brown, 48 NY2d 388, 394 [1979]). Indeed, the fact-intensive nature of these kinds of issues requires that ‘[e]ach case ... be examined on its unique facts to determine the nature of the misconduct and the likelihood that prejudice was engendered’ (People v Clark, 81 NY2d 913, 914 [1993])” (id.; see People v Rivera, 304 AD2d 841 [2d Dept 2003]; People v Leonard, 252 AD2d 740 [3d Dept 1998]; People v Rhodes, 92 AD2d 744 [4th Dept 1983]).
Aside from the five jurors who testified at the hearing on the instant motion, the only other people to testify were defendant, his brother, wife and trial attorney. Each of them testified that when he/she spoke with juror number 4 some 15 to 20 minutes following the rendition of the jury’s verdict, the juror appeared to be intoxicated. None of these witnesses can be deemed disinterested. (See e.g., United States v Schultz, 656 F Supp 1218 [ED Mich 1987].) Significantly, defense counsel chose not to call *506 any of the courtroom personnel to testify in support of the motion.
Although the jury foreperson sent two notes to the court during deliberations, neither note made any reference to juror number 4, or, for that matter, to any perceived juror incompetence. (See generally Anderson v Miller, 346 F3d 315 [2d Cir 2003]; Jacobson v Henderson, 765 F2d 12 [2d Cir 1985].) Moreover, several weeks after the verdict, the foreperson sent a letter to the court requesting leniency in sentencing defendant (court exhibit 5). Nowhere in the letter was there any reference to incompetence of any member of the jury. Indeed, the foreperson stated, “I stand by the verdict. . . .” (Court exhibit 5.)
During the deliberations and at the time the verdict was announced, the jury entered and left the courtroom three times. It is my practice to observe the jury as I respond to requests in their notes to ensure that they are satisfied with my responses. I also make it my practice to observe the jury upon their rendering the verdict. In this case I noted nothing unusual about the demeanor of any of the jurors during any of these events.- The jury was polled individually on their verdict. Juror number 4 did not hesitate to confirm his verdict, and there was nothing unusual that the court observed in his demeanor in doing so. (See People v Gajadhar, 281 AD2d 223 [1st Dept 2001], lv denied 96 NY2d 829 [2001]; cf. People v Sanabria, 266 AD2d 41 [1st Dept 1999], lv denied 94 NY2d 884 [2000].) Further, in the past the court officers in my courtroom have been careful to alert me to juror problems or requests. Nothing was brought to my attention in this case about any juror appearing to be intoxicated.
Defendant’s wife, brother and trial counsel all conceded that, when the jury was polled, the speech of juror number 4 was not slurred. None of the nonjuror defense witnesses who testified at the hearing noticed juror number 4 have any trouble getting to his seat when the verdict was announced.
Although early case law held that any use by a juror of intoxicating liquor was fatal to the verdict (People v Schad, 58 Hun 571 [1891]), “[t]he modern view is that the consumption of alcohol is not prejudicial as a matter of law . . . .” (United States v Provenzano, 620 F2d 985 [3d Cir 1980], cert denied 449 US 899 [1980]; Massey v State, 541 A2d 1254 [Del 1988] [evidence of juror ingestion of alcohol or drugs insufficient to warrant a presumption of prejudice].)
*507 This court finds it reprehensible that a juror would imbibe alcohol at any time during trial. Nevertheless, in this case defendant has failed to show that juror number 4 was affected by the use of alcohol in the performance of his duties.[4] (Cf. People v Sledge, 223 AD2d 922 [3d Dept 1996], lv denied 88 NY2d 854 [1996] [affirming denial of defense motion to set aside jury verdict on ground of juror misconduct during deliberations, including, inter alia, buying beer and gathering for game of cards and beer, where misconduct was not shown to affect jury’s consideration of evidence or prejudice substantial rights of defendant].)
Courts in other jurisdictions determining motions similar to the instant have refused to invalidate convictions where, as here, the defendant fails to show that the juror’s condition affected his ability to deliberate. Thus, in United States v Provenzano (620 F2d 985 [3d Cir 1980], cert denied 449 US 899 [1980]), the Third Circuit Court of Appeals held that the defendants had failed to demonstrate prejudice where one juror and two alternate jurors had been discovered smoking marijuana toward the end of the trial.
Similarly, in United States v Taliaferro (558 F2d 724 [4th Cir 1977], cert denied 434 US 1016 [1978]), the Fourth Circuit Court of Appeals affirmed a conviction where evidence showed that the majority of the jurors imbibed alcoholic beverages during deliberations. The court held that the defendant had failed to show prejudice, i.e., that a juror became intoxicated so that he or she was affected in the performance of his or her duties. (Cf. United States v Ortiz, 1993 WL 303286, 1993 US Dist LEXIS 10856 [ED Pa, Aug. 5, 1993] [held: conduct of three jurors who appeared to sleep during court’s charge did not deprive defendant of right to fair trial in absence of showing of prejudice].)
*508 Defendant has failed to meet his burden to prove misconduct by a preponderance of the evidence and to show that it created a substantial risk of prejudice. Accordingly, his motion to set aside the verdict is denied.

. Defendant was found not guilty of two additional counts of petit larceny.

. Although defense counsel sought and obtained continuances of the hearing in order to interview the sixth juror, who was in Europe, and to transport him to court to testify, the defense ultimately determined not to call him as a witness on the ground that his testimony would be “cumulative.”

. To the extent that the court failed, sua sponte, to preclude the testimony of the jurors, it acknowledges that it was remiss. Indeed, the very policy considerations that preclude the admission of juror testimony to impeach a verdict were implicated here. The jurors were haled into court, and what was previously a matter of private discussion became, via the hearing, the subject of public investigation.

. Even if the court were to consider the jurors’ testimony, defendant has not met his burden. Juror number 4 testified that he was not intoxicated during the deliberations, that he was in control of his faculties, that he listened to the other jurors, and that he was very clear on his decision as to the verdict. The foreperson testified that, at the outset of deliberations, she noted a faint odor of alcohol on his breath and that he made annoying comments. While she felt that juror number 4 had been under the influence of alcohol, she acknowledged that his speech was not slurred, that he was not staggering, and that he was alert. The remaining jurors who testified stated that juror number 4 seemed agitated, but none of them thought that he was under the influence of alcohol or intoxicated.