******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DWIGHT DALEY *v.* J.B. HUNT
TRANSPORT, INC., ET AL.
(AC 39835)

DiPentima, C. J., and Lavine and Moll, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendants for, inter alia, a violation of the Connecticut Fair Employment Practices Act (§ 46a-60 et seq.) in connection with the termination of the plaintiff's employment. The day after the jury returned its verdict in favor of the plaintiff, one of the jurors, R, appeared at the courthouse and notified court staff that she was ready to continue jury deliberations. After the trial judge reminded R that the jury had returned its verdict the day before and of the amount of the verdict, R became visibly upset and stated that she did not remember the jury concluding its deliberations or returning its verdict. The court subsequently held a status conference in which it informed the parties' attorneys of the events that had transpired with R. Thereafter, the defendants filed a motion seeking a new trial or, alternatively, an evidentiary hearing regarding the competency of R. The trial court denied the defendants' motion seeking a new trial or an evidentiary hearing, finding that the parties had deemed R to be an acceptable juror during jury selection, and that the parties did not challenge the competency of R during the evidentiary portion of the trial, jury deliberations or the return and acceptance of the jury's verdict. On the defendants' appeal and the plaintiff's cross appeal, *held* that, under the unique circumstances of this case, the trial court erred in failing to hold a postverdict evidentiary hearing to examine R's competency during trial; there must be a preliminary showing of strong evidence that the juror likely was incompetent during his or her jury service before a trial court is required to conduct a full postverdict inquiry into the juror's competency, as that standard serves the interests of the avoidance of postverdict harassment of jurors, the preservation of the finality of judgments, the discouragement of meritless applications for postverdict hearings, and the reduction of the likelihood of and temptation for jury tampering, and there was sufficient evidence in the present case indicating that R likely was not competent to serve on the jury, as R's statements to the trial judge and in a letter she had submitted to the court, in which she stated that she had experienced a memory gap with respect to the deliberations and the verdict, that she was concerned that she may have suffered other mental lapses during the trial and that she planned to undergo a medical evaluation to determine whether she suffered from dementia or Alzheimer's disease, constituted strong evidence that R likely had been incompetent during her jury service, such that a full inquiry by the court into R's competency was necessary.

Argued October 11, 2018—officially released February 5, 2019

*Procedural History*

Action to recover damages for, inter alia, wrongful termination of employment, and for other relief, brought to the Superior Court in the judicial district of Fairfield and tried to the jury before *Hon. William B. Rush*, judge trial referee; verdict and judgment for the plaintiff; thereafter, the court denied the defendants' motion for a new trial and their motion to set aside the verdict and for judgment notwithstanding the verdict, and the defendants appealed and the plaintiff cross appealed to this court. *Reversed in part; further proceedings.*

*Christopher M. Hodgson,* with whom, on the brief, was *Warren L. Holcomb,* for the appellants-cross appel-

lees (defendants).

*Francis D. Burke,* for the appellee-cross appellant (plaintiff).

*Opinion*

MOLL, J. The defendants, J.B. Hunt Transport, Inc. (J.B. Hunt), and David Bryant, appeal, and the plaintiff, Dwight Daley, cross appeals, from the judgment of the trial court rendered in accordance with a jury verdict returned in favor of the plaintiff. The threshold issue raised by the defendants on appeal that we must resolve is whether the court erred in declining to conduct a postverdict evidentiary hearing to determine whether one of the jurors, R.L.,[1] had been competent to serve on the jury. We conclude that the court committed error, and we reverse in part the judgment of the court and remand the case for further proceedings while retaining our jurisdiction over the remaining claims on appeal and over the cross appeal pending the outcome of the proceedings on remand.

The following facts, as found by the trial court in its memorandum of decision or as undisputed in the record, and procedural history are relevant to our resolution of the threshold issue before us. In December, 2013, the plaintiff commenced the underlying action against the defendants. In the operative complaint (complaint), the plaintiff alleged, inter alia, that the defendants terminated his employment despite previously having assured him that he could return to work after he recovered from injuries he had sustained as a result of a motor vehicle accident unrelated to his employment. The complaint included, inter alia, the following counts asserted against the defendants: violation of the Connecticut Fair Employment Practices Act, General Statutes § 46a-60 et seq.; promissory estoppel; negligent misrepresentation; fraudulent misrepresentation; and, as to J.B. Hunt only, breach of the implied covenant of good faith and fair dealing. The defendants denied the plaintiff's substantive allegations and raised several special defenses. The plaintiff denied the allegations of the defendants' special defenses.

The case was tried to a jury over the course of seven days in August, 2016. Shortly after 5 p.m. on Thursday, August 11, 2016, following less than one day of deliberations,[2] the jury returned a verdict in favor of the plaintiff, awarding him $200,000 in economic damages and $25,000 in noneconomic damages. In reaching its verdict, the jury answered several interrogatories.[3] On the record, the clerk twice read the jury's verdict and its answers to the interrogatories, and, after each recitation, the clerk asked the jury to confirm its verdict. All of the jurors, including R.L., replied "yes" on both occasions.[4] The trial court, *Hon. William B. Rush,* judge trial referee, thereupon accepted and recorded the verdict at 5:08 p.m.

On Friday, August 12, 2016, R.L. appeared at the courthouse where the underlying case had been tried and notified court staff that she was ready to continue

jury deliberations.[5] Judge Rush spoke with R.L. in the civil caseflow office and reminded her that the jury had returned its verdict in favor of the plaintiff the day before. Judge Rush also reminded R.L. of the amount of the verdict. In response to that information, R.L. became visibly upset and stated that she did not remember the jury concluding its deliberations or returning its verdict. Immediately thereafter, the court scheduled a status conference, which took place in chambers on August 16, 2016, during which he apprised the parties' attorneys of the events that had transpired regarding R.L. During the status conference, the court also provided the attorneys with a copy of a handwritten letter submitted by R.L. to the court,[6] which was dated August 12, 2016, in which R.L. wrote in relevant part: Upon arriving at the courthouse for the purpose of finishing the jury's deliberations, she was "surprise[d]" to learn that the jury had returned its verdict; she did not remember the jury concluding its deliberations or returning its verdict the day before; she did not have a prior history of "memory gaps," but she "definitely" had experienced such a memory lapse with regard to the jury's deliberations and the return of its verdict; she was concerned that she may have suffered "other gaps" during the trial; she was sixty-four years old and intended to undergo a medical evaluation to determine whether she had "dementia/Alzheimer's [disease]," which had been recommended to her by a caregiver because her mother had been diagnosed with early onset Alzheimer's disease at sixty years of age; and she disagreed with the amount of the verdict, as she would "never want [the defendants] to pay any more than [thirty, forty, *maybe* fifty] thousand [dollars]." (Emphasis in original.)

On September 16, 2016, the defendants filed a motion seeking a new trial on the ground that R.L. had been incompetent during the trial, thereby depriving them of their right to due process.[7] As alternative relief, the defendants requested that the court conduct an evidentiary hearing to evaluate R.L.'s competency.[8] The plaintiff opposed that motion.

On October 11, 2016, the trial court heard argument on, inter alia, the defendants' motion seeking a new trial or, alternatively, an evidentiary hearing addressing R.L.'s competency during trial. By way of a memorandum of decision dated November 4, 2016, the court denied the motion seeking a new trial, including the alternative request for an evidentiary hearing.[9] The court found that, during jury selection, the parties had deemed R.L. to be an acceptable juror, and that none of the parties had challenged the competency of R.L. during the evidentiary portion of the trial, jury deliberations, or the return and acceptance of the jury's verdict. It also found that R.L., along with the other jurors, twice confirmed the verdict on the record.

In addition, the court determined that, although a

specific claim of juror misconduct generally would require an inquiry by the court, a juror's failure to remember deliberations that resulted in a verdict did not constitute juror misconduct. The court further stated in relevant part: "The instructions to the jury by the court . . . instructed the jury that each juror must decide the case for themselves and not merely acquiesce in the verdict of their fellow jurors. The fact that, after the lengthy deliberations and the [rendition and acceptance of the verdict], a juror does not remember those events does not mean that they did not take place in accordance with our laws. The notes of the court indicate the instructions to the jury were completed at 11:03 a.m. and that the verdict was accepted shortly after 5 p.m. so that it is not a short period of time that [R.L.] cannot recall. However the failure to recall those events is itself a postverdict event. The holding of a hearing on [the] issue of the competence of [R.L.] during the course of the trial, the deliberations of the jury and the rendition and acceptance of the verdict would require, for a thorough analysis, an inquiry into areas which, under the law, the court cannot do. If [R.L.] cannot recall the deliberations and the rendition of the verdict it is doubtful that [R.L.] could reliably recall the state of her competency during the trial itself and any further inquiry would involve the court directly in the process of the deliberations. Accordingly, the request of the defendants to hold a hearing and the motion to set aside the verdict on the issues raised [concerning R.L. are] hereby denied."[10] This appeal and cross appeal followed.

The threshold issue raised by the defendants on appeal is whether, in light of the events involving R.L. that transpired on Friday, August 12, 2016, the trial court erred in declining to conduct a postverdict evidentiary hearing to determine whether R.L. had been competent to serve as a juror during the trial. We conclude that, under the unique circumstances of the present case, the court committed error in failing to hold a postverdict evidentiary hearing to examine R.L.'s competency.

We begin by setting forth the relevant standard of review. "We consistently have held that, unless otherwise required by statute, a rule of practice or a rule of evidence, whether to conduct an evidentiary hearing generally is a matter that rests within the sound discretion of the trial court." (Internal quotation marks omitted.) *Customers Bank* v. *CB Associates, Inc.*, 156 Conn. App. 678, 695, 115 A.3d 461 (2015). The defendants have not identified a statute, a rule of practice, or a rule of evidence that required the trial court to hold an evidentiary hearing to evaluate R.L.'s competency and, thus, we review the court's decision declining to conduct an evidentiary hearing under the abuse of discretion standard of review.

As an initial matter, we note that, in cases involving

specific allegations of juror *misconduct*, a trial court is required to perform a preliminary inquiry into those allegations. See *Harrison* v. *Hamzi*, 77 Conn. App. 510, 522, 823 A.2d 446, cert. denied, 266 Conn. 905, 832 A.2d 69 (2003). "[T]he form and scope of such an inquiry lie within a trial court's discretion . . . . That form and scope may vary from a preliminary inquiry of counsel, at one end of the spectrum, to a full evidentiary hearing at the other end of the spectrum, and, of course, all points in between. Whether a preliminary inquiry of counsel, or some other limited form of proceeding, will lead to further, more extensive, proceedings will depend on what is disclosed during the initial limited proceedings and on the exercise of the trial court's sound discretion with respect thereto." (Internal quotation marks omitted.) Id. In the present case, the threshold issue before us is whether the trial court erred in declining to conduct a postverdict evidentiary hearing to address a juror's competency during trial, rather than a juror's alleged misconduct. The parties have not cited, and our research has not revealed, any authoritative Connecticut case law that informs our analysis of this discrete issue. Thus, we turn to federal case law for guidance. See, e.g., *Bristol* v. *Tilcon Minerals, Inc.*, 284 Conn. 55, 88, 931 A.2d 237 (2007).

In *Sullivan* v. *Fogg*, 613 F.2d 465, 467–68 (2d Cir. 1980), the United States Court of Appeals for the Second Circuit held that a trial court erred in failing to conduct a complete postverdict inquiry into a juror's competency. In *Sullivan*, approximately one month following a criminal jury trial in which the petitioner had been found guilty of two counts of murder and one count of illegal possession of a weapon, one of the jurors contacted the local district attorney to complain that he was being harassed by "voices." (Internal quotation marks omitted.) Id., 466. The juror was brought before the trial court for questioning to determine whether he had been competent during the trial. Id. The juror presented testimony suggesting that he had experienced delusions or paranoid sensations during the trial and that he had heard "vibrations" throughout the trial that seemed amplified in the jury room. (Internal quotation marks omitted.) Id. He testified that he had heard a "voice, [he had] heard [his] name," and that "they were spying maybe in favor of the [petitioner]," but that the "voices" had not influenced him in reaching his verdict. (Internal quotation marks omitted). Id. He further testified that he previously had heard "voices" while serving as a juror in a prior unrelated criminal trial, which had resulted in a conviction. Id. The trial court appointed a psychiatrist to perform an independent evaluation of the juror. Id. In a written report submitted to the court, the court-appointed psychiatrist determined that, although the juror appeared to have a "schizoid personality with paranoid features . . . vulnerable to a paranoid psychotic decompensation,"

the juror had been competent during the trial because the "voices" he had heard had not influenced his verdict or prevented him from making a rational judgment on the merits of the case. (Internal quotation marks omitted.) Id. The petitioner was not given an opportunity to cross-examine the court-appointed psychiatrist or to retain his own psychiatrist to testify. Id. On the basis of the court-appointed psychiatrist's report, the trial court concluded that no additional inquiry into the juror's competency was necessary. Id. The petitioner's conviction was affirmed on appeal. Id. Thereafter, the petitioner filed a petition for a writ of habeas corpus in federal district court, which was denied. Id.

On appeal from the denial of his petition for a writ of habeas corpus, the petitioner claimed that his right to due process had been violated as a result of the trial court's failure to conduct a full and fair hearing to evaluate the juror's competency. Id. The Second Circuit agreed with the petitioner that a full inquiry into the juror's competency was necessary. Id., 467–68. In reaching that conclusion, the Second Circuit pronounced: "Due process requires that jurors be sane and competent during trial. . . . Once a preliminary showing of incompetence or juror misconduct has been made there is a corresponding right to an inquiry into the relevant surrounding circumstances. . . . Where the allegations involve considerations internal to the jury deliberation process, such as juror insanity, this court has required strong evidence that it is likely that the juror suffered from such incompetence before ordering a post-verdict inquiry. . . . This high threshold is intended to avoid post-verdict harassment of jurors, preserve the finality of judgments, discourage meritless applications for post-verdict hearings, and reduce the likelihood of and temptation for jury tampering." (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 467. The Second Circuit determined that there had been a "sufficient showing of incompetence to justify, indeed to require, a further inquiry" into the juror's competency, emphasizing in particular the juror's unsolicited statements that were "strongly suggestive of incompetence during trial and deliberations."[11] Id. As relief, the Second Circuit reversed the habeas court's judgment and remanded the case with instructions to grant the petition for a writ of habeas corpus unless the state reopened the hearing and provided the petitioner with an opportunity to cross-examine the court-appointed psychiatrist or the petitioner was granted a new trial. Id., 468.

We adopt the standard set forth in *Sullivan*, namely, that there must be a preliminary showing of strong evidence that a juror likely was incompetent during his or her jury service before a trial court is required to conduct a full postverdict inquiry into the juror's competency. Id., 467. We are persuaded that such a standard serves the interests identified in *Sullivan*, namely, the

avoidance of postverdict harassment of jurors, the preservation of the finality of judgments, the discouragement of meritless applications for postverdict hearings, and the reduction of the likelihood of and temptation for jury tampering. Id.

In the present case, the defendants assert that there was sufficient evidence in the record indicating that R.L. likely was not competent to serve on the jury and, therefore, the court should have held a postverdict evidentiary hearing to inquire into R.L.'s competency. In response, the plaintiff argues, inter alia, that there was no evidence in the record suggesting that R.L. had been incompetent during her jury service. We agree with the defendants. One day after the jury had finished deliberating and returned its verdict, R.L. spoke with Judge Rush personally and informed him that she could not recall the conclusion of the jury's deliberations or the return of the verdict. In addition, in her letter submitted to the court, R.L. wrote that she was "surprise[d]" to learn that the jury had returned its verdict, she "definitely" had experienced a "memory gap" with respect to the jury's deliberations and the return of the verdict, and she was concerned that she may have suffered other mental lapses during the trial. She further wrote that she planned to undergo a medical evaluation, which had been recommended to her by a caregiver, to determine whether she suffered from "dementia/Alzheimer's [disease]," particularly given that her mother had been diagnosed with early onset Alzheimer's disease at approximately her age. Although there had not been any overt indication prior to the jury returning its verdict that R.L. may have been suffering from a medical condition that rendered her incompetent during her jury service, we conclude that R.L.'s statements to Judge Rush and her letter submitted to the court constitute strong evidence that R.L. likely had been incompetent during her jury service, such that a full inquiry by the court into R.L.'s competency was necessary.[12] Thus, the court erred in failing to hold a postverdict evidentiary hearing to determine whether R.L. had been competent to serve as a juror during the trial.[13]

Having concluded that the trial court committed error in failing to conduct a full postverdict inquiry into R.L.'s competency during the trial, we reverse the portion of the judgment denying the defendants' motion seeking a new trial or, alternatively, an evidentiary hearing addressing R.L.'s competency and remand the case for an evidentiary hearing to determine whether R.L. had been competent to serve as a juror.[14] Deciding the form and scope of the hearing to be held on remand is within the discretion of the trial court.[15] See, e.g., *Sullivan* v. *Fogg*, supra, 613 F.2d 468 (trial court has discretion to determine form of postverdict evidentiary hearing examining juror's competency); see also, e.g., *State* v. *Biggs*, 176 Conn. App. 687, 709, 171 A.3d 457 (trial courts have wide discretion in conducting evidentiary hearings

to assess allegations of juror misconduct), cert. denied, 327 Conn. 975, 174 A.3d 193 (2017).[16] After conducting the evidentiary hearing and determining whether R.L. was competent to serve on the jury, the trial court must decide whether to grant the defendants' motion seeking a new trial.[17]

This conclusion effectively disposes of the threshold issue before us. In addition to appealing from the trial court's denial of their motion seeking a new trial or, alternatively, an evidentiary hearing addressing R.L.'s competency, the defendants claim that the court erred in denying (1) their motion to set aside the verdict and for judgment notwithstanding the verdict, and (2) a request submitted by them to charge the jury on mitigation of damages. In his cross appeal, the plaintiff claims that the court erroneously denied (1) his motion for punitive damages, (2) his motion seeking postjudgment interest,[18] and (3) a request submitted by him to charge the jury on retaliation in violation of the Connecticut Fair Employment Practices Act. Rather than addressing these other claims at this time, we believe that the wiser approach, under the unique circumstances of this case, is to retain our jurisdiction over the remaining claims on appeal and over the cross appeal pending the outcome of the proceedings on remand, which may obviate the need for appellate review of these other claims. See, e.g., *Tayco Corp.* v. *Planning & Zoning Commission*, 294 Conn. 673, 688, 986 A.2d 290 (2010) (reversing judgment denying motion to dismiss and remanding case for further proceedings while retaining jurisdiction over appeal to review, as necessary, other claims raised on appeal); *Higgins* v. *Karp*, 239 Conn. 802, 811, 687 A.2d 539 (1997) (reversing judgments and vacating denials of motions to set aside defaults, and remanding case for redetermination of whether good cause existed to set aside defaults while retaining jurisdiction over appeal to review other claims raised on appeal in event that trial court did not find good cause to set aside defaults); *Gilbert* v. *Beaver Dam Assn. of Stratford Inc.*, 85 Conn. App. 663, 675, 680–81, 858 A.2d 860 (2004) (affirming in part and reversing in part judgment and remanding case for additional proceedings on plaintiff's claims under Common Interest Ownership Act, General Statutes § 47-200 et seq., while retaining jurisdiction over appeal to consider plaintiff's claim regarding validity of association's bylaws pending outcome of proceedings on remand), cert. denied, 272 Conn. 912, 866 A.2d 1283 (2005); *Colonial Penn Ins. Co.* v. *Patriot General Ins. Co.*, 45 Conn. App. 630, 633, 697 A.2d 694 (1997) (ordering limited remand for trial court to assure compliance with applicable notice requirement while retaining jurisdiction over case); *O'Bymachow* v. *O'Bymachow*, 10 Conn. App. 76, 78–79, 521 A.2d 599 (1987) (setting aside judgment declining to consider motion to open and remanding case to trial court to adjudicate motion to open while retaining jurisdiction over appeal

from denial of motion for modification pending resolution of motion to open); see also General Statutes § 51-197a (b) (providing that "[t]he Appellate Court may issue all writs necessary or appropriate in aid of its jurisdiction and agreeable to the usages and principles of law").

The judgment is reversed only as to the denial of the defendants' motion seeking a new trial or, alternatively, an evidentiary hearing and the case is remanded for further proceedings consistent with this opinion. We retain jurisdiction over the case in order to resolve, as necessary, the remaining claims presented in the appeal and the cross appeal pending the outcome of the proceedings on remand.

In this opinion the other judges concurred.

[1] To protect the privacy of the juror discussed in this opinion, we shall refer to her only by her initials. See *Hurley* v. *Heart Physicians, P.C.*, 298 Conn. 371, 388 n.14, 3 A.3d 892 (2010).

[2] The jury was charged on August 11, 2016.

[3] On the basis of its answers to the interrogatories, the jury found in favor of the plaintiff on the following counts: promissory estoppel; negligent misrepresentation; fraudulent misrepresentation; and breach of the covenant of good faith and fair dealing.

[4] After the jury twice had confirmed its verdict, the trial court submitted two additional interrogatories to the jury, namely: (1) whether the plaintiff was entitled to recover $225,000 in damages from the defendants collectively; or (2) whether the plaintiff was entitled to recover $225,000 in damages from each defendant, for a total amount of $450,000. The jury answered "yes" to the first interrogatory and "no" to the second interrogatory. On the record, the court read the jury's answers to those interrogatories and asked the jury to confirm its answers. All of the jurors, including R.L., replied "yes."

[5] In a memorandum of decision disposing of, inter alia, several postverdict motions, the trial court stated that the verdict had been accepted on "Friday August 11, 2016" and that R.L. had gone to the courthouse "[t]he following Tuesday . . . ." On July 10, 2017, the parties filed a joint motion to correct the memorandum of decision, to reflect, inter alia, that R.L.'s postverdict appearance at the courthouse occurred on Friday, August 12, 2016, and that the parties' attorneys had attended a status conference with the court on Tuesday, August 16, 2016, to discuss the events concerning R.L. The court neither ruled on the joint motion to correct nor amended the memorandum of decision at any time thereafter.

We take judicial notice that August 11, 2016, was a Thursday and August 12, 2016, was a Friday. See *Federal Deposit Ins. Corp.* v. *Napert-Boyer Partnership*, 40 Conn. App. 434, 442, 671 A.2d 1303 (1996) ("[f]acts which are of common knowledge, that is, facts so well known that evidence to prove them is unnecessary are proper subjects of judicial notice" [internal quotation marks omitted]); see also *Old Lyme Associates Corp.* v. *Zoning Commission*, 31 Conn. Supp. 440, 441, 333 A.2d 406 (1974) ("[c]ourts may take cognizance of the days of the week with the days of the month"). In their joint motion to correct, the parties represented that R.L. had arrived at the courthouse on Friday, August 12, 2016. Further, in a letter dated August 12, 2016, which R.L. had submitted to the court, R.L. wrote that she had arrived at the courthouse "today . . . ." In addition, during argument on the parties' respective postverdict motions, Judge Rush, in reciting the events regarding R.L., stated that he had informed R.L. that the jury's verdict had been returned and accepted "the day before . . . ." The verdict was returned and accepted on Thursday, August 11, 2016. In light of the above, we conclude that the court mistakenly determined that R.L. had gone to the courthouse on August 16, 2016, the Tuesday following the return and acceptance of the verdict, rather than on Friday, August 12, 2016.

[6] R.L. addressed the letter to the Honorable Barbara N. Bellis, the presiding civil judge for the judicial district of Fairfield.

[7] The trial court granted the parties an extension of time to file postverdict motions through September 16, 2016.

[8] On August 23, 2016, the defendants filed a caseflow request asking the trial court to schedule an evidentiary hearing to determine whether R.L.

had been competent to serve on the jury. The plaintiff opposed that request.

[9] In its memorandum of decision, the trial court also denied the following: a motion to set aside the verdict and for judgment notwithstanding the verdict filed by the defendants; a motion for punitive damages filed by the plaintiff; a motion for prejudgment and postjudgment interest filed by the plaintiff; and a request to file an amended complaint filed by the plaintiff.

[10] Although the trial court stated that it was denying "the request of the defendants to hold a hearing and the motion to set aside the verdict on the issues raised [concerning R.L.]," we construe the court's ruling as a denial of the defendants' motion seeking a new trial or, alternatively, an evidentiary hearing to address R.L.'s competency. The court subsequently denied the defendants' separate motion to set aside the verdict and for judgment notwithstanding the verdict.

[11] In *Sullivan*, the Second Circuit distinguished the case before it from *United States* v. *Dioguardi*, 492 F.2d 70 (2d Cir.), cert. denied, 419 U.S. 873, 95 S. Ct. 134, 42 L. Ed. 2d 112 (1974), in which it had addressed a claim regarding a juror's competency. In *Dioguardi*, approximately ten days following a jury trial in which two codefendants had been found guilty of several criminal charges, one of the jurors mailed an unsolicited letter to one of the defendants in which the juror wrote, inter alia, that her "clairvoyant" powers enabled her to see that the defendant was a good person, but that she believed he was guilty and should repent. Id., 72, 75. Several psychiatrists contacted by defense counsel opined, on the basis of the juror's letter, that the juror appeared to suffer from various mental illnesses, but that a psychiatric evaluation was necessary to develop a clear diagnosis and determine whether the juror's mental illnesses had prevented her from comprehending the trial proceedings. Id., 76. The codefendants moved for a new trial or, alternatively, an evidentiary hearing to examine the juror's competency. Id., 78. The trial court denied the motion. Id. On appeal, the Second Circuit upheld the denial of the motion, concluding that the juror's letter, accompanied by the "horseback uninformed opinions" of the psychiatrists, fell "considerably short of justifying any further inquiry" into the juror's competency. Id., 78–79, 81.

In *Sullivan*, the Second Circuit determined that *Dioguardi* was distinguishable, stating: "In *Dioguardi*, unlike this case, there was *no evidence* that the alleged feelings of clairvoyance and other psychic phenomena exhibited by the juror after trial were present *during trial*. In addition, the evidence in [*Dioguardi*] consisted of a letter written by the juror to the defendant. Here the juror's own statements indicated that the delusions occurred during trial, and there was ample justification for ordering a further inquiry." (Emphasis added.) *Sullivan* v. *Fogg*, supra, 613 F.2d 467. The foregoing indicates that the Second Circuit, in concluding that the high threshold necessitating a full evidentiary hearing had been satisfied in *Sullivan*, found particularly important that (1) the juror made personal, unsolicited statements suggesting that he had suffered from a mental illness, and (2) the evidence showed that the juror's alleged mental illness likely had been present *during the trial*.

[12] We consider the unique circumstances of this case to be more analogous to *Sullivan* than to *Dioguardi*. In her unsolicited statements made personally to Judge Rush and/or in her letter submitted to the court, R.L. expressed: she was "surprise[d]" to learn that the jury had returned its verdict, as she had no recollection of the jury concluding its deliberations or returning its verdict; although she did not have a prior history of "memory gaps," she "definitely" had experienced such a memory lapse as to the jury's deliberations and the return of its verdict and she feared that she potentially had suffered "other gaps" during the trial; and she was sixty-four years old and intended to undergo a medical evaluation to determine whether she had "dementia/Alzheimer's [disease]," per a caretaker's recommendation because her mother had been diagnosed with early onset Alzheimer's disease at sixty years of age. Here, as in *Sullivan* and unlike *Dioguardi*, the evidence in the record indicates that it is likely that R.L. suffered from a medical condition that rendered her incompetent *during the trial*, and the evidence was not limited to the letter submitted by R.L. to the trial court, but also consisted of unsolicited statements made personally by R.L. to Judge Rush. See footnote 11 of this opinion.

[13] The plaintiff argues that, even assuming that R.L. had been incompetent to serve as a juror, there is no indication that the defendants were prejudiced by R.L.'s incompetency. We disagree. Due process requires that jurors be sane and competent during trial. *Sullivan* v. *Fogg*, supra, 613 F.2d 467. A juror deemed to be incompetent cannot, as a matter of law, be considered

to be a fair and impartial juror.

[14] We note that we consider our conclusion to be consistent with the United States Supreme Court's decision in *Tanner* v. *United States*, 483 U.S. 107, 107 S. Ct. 2739, 97 L. Ed. 2d 90 (1987). In *Tanner*, the court held that Federal Rule of Evidence § 606 (b) (Rev. 1974), which prohibited a juror from testifying "as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith," subject to exceptions pertaining to "extraneous prejudicial information" or "outside influence[s]," precluded jurors from being called as witnesses at a postverdict evidentiary hearing to testify about misconduct in the form of drug and alcohol use by certain jurors during trial for the purpose of impeaching the jury's verdict because juror intoxication did not constitute an "outside influence." (Internal quotation marks omitted.) Id., 121–25. The court noted that § 606 (b) was "grounded in the common-law rule against admission of jury testimony to impeach a verdict and the exception for juror testimony relating to extraneous influences." Id., 121. The court also recognized that there was another common-law exception allowing a postverdict inquiry into a juror's competency in cases of "substantial if not wholly conclusive evidence of incompetency . . . ." (Internal quotation marks omitted.) Id., 125. Without deciding whether § 606 (b) retained that common-law exception, the court determined that the evidence in the record supporting the allegation of juror misconduct, which included a juror's affidavit in which the juror attested that several jurors consumed alcohol and fell asleep during the trial, did "not suffice to bring this case under the common-law exception allowing post-verdict inquiry when an extremely strong showing of incompetency has been made." Id., 126.

[15] The plaintiff argues that an evidentiary hearing addressing R.L.'s competency necessarily would require an inquiry into R.L.'s mental processes during the jury's deliberations in violation of Practice Book § 16-34. We disagree. Section 16-34 provides: "Upon an inquiry into the validity of a verdict, no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror nor any evidence concerning mental processes by which the verdict was determined. Subject to these limitations, a juror's testimony or affidavit shall be received when it concerns any misconduct which by law permits a jury to be impeached." The proscription contained in § 16-34 is not implicated here. An inquiry into R.L.'s competency will not require the parties or the court to delve into the substance of the jury's deliberations or R.L.'s "mental processes by which the verdict was determined"; rather, the relevant inquiry will be whether R.L. suffered from a medical condition that would have prevented her from fulfilling her duties as a competent juror.

[16] We are aware that a considerable amount of time has passed since the verdict was returned and accepted in this case. We expect that, in exercising its discretion on remand, the trial court will consider the passage of time.

[17] Thereupon, pursuant to Practice Book § 61-9, the parties may file an amended appeal and/or an amended cross appeal, as the case may be, for the narrow purpose of seeking appellate review of any subsequent rulings made by the trial court on remand.

In addition, to avoid triggering a dispute over the application of General Statutes § 51-183c, we make clear that we perceive no bar to Judge Rush, if available, conducting the proceedings on remand as ordered herein. See *State* v. *Santiago*, 245 Conn. 301, 340–41 n.25, 715 A.2d 1 (1998) (following reversal of judgment with respect to trial court's decision not to conduct more extensive inquiry into postverdict allegation of juror misconduct, different judge is not required to preside over proceedings on remand to make such inquiry); see also *Barlow* v. *Commissioner of Correction*, 166 Conn. App. 408, 426–27 n.10, 142 A.3d 290 (2016) ("We observe that the court [in *Santiago*] did not remand the case for a new trial on the merits of the case, but for further proceedings related to an allegation of juror misconduct. As opposed to a new trial, such a proceeding is more like a sentencing hearing, a hearing related to pretrial matters, or a short calendar hearing—proceedings to which § 51-183c does not apply. . . . In light of the particular circumstances of that case and the issues that would come before the court on remand, it determined prospectively that the trial judge's participation in the case on remand would not give rise to an appearance of impartiality or bias. Its determination in this regard was dispositive of the issue of the propriety of the trial court's participation in the case on remand." [Citations omitted.]), appeal dismissed, 328 Conn. 610, 182 A.3d 78 (2018).

[18] The plaintiff also moved for an award of prejudgment interest, which the trial court denied. During oral argument before this court, the plaintiff conceded that he is not pursuing his claim on appeal regarding prejudgment interest.

—————————————————